### In re COLLIS.

(Supreme Court, Appellate Division, First Department. May 5, 1911.)

1. EMINENT DOMAIN (§ 237*)—REPORT OF COMMISSIONERS—REFUSAL OF CONFIRMATION—NEW COMMISSIONERS.

Where the court refuses to confirm a report of commissioners of estimate and assessment on the ground that the damages awarded are excessive under the evidence, new commissioners should be appointed.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 237.*]

2. EMINENT DOMAIN (§ 131*)—COMPENSATION—VALUE OF PROPERTY TAKEN.

Where real estate experts differed as to what land sought to be taken for a public use could be used for in the future, the commissioners of estimate and assessment should determine the present value, by determining what it would sell for at the present time.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 353; Dec. Dig. § 131.*]

Scott, J., dissenting in part.

Appeal from Special Term, New York County.

Application by Charles H. T. Collis, commissioner, for the acquisition of land for purposes of sewerage. From an order denying a motion to confirm report of commissioners of estimate and assessment, the parties aggrieved appeal. Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN. CLARKE, SCOTT, and MILLER, JJ.

Frederic B. Jennings, for appellants.
L. Howell La Motte, for respondent.

SCOTT, J. (dissenting in part). This is an appeal from an order denying a motion to confirm the report of commissioners in condemnation proceedings and referring the matter back to the same commissioners for further consideration. The ground upon which confirmation was refused was that in the estimation of the court the award for damages was too large. This conclusion was arrived at, not because the commissioners had adopted any erroneous principle in assessing the award, but merely because the court arrived at a different conclusion from that which the commissioners had arrived at upon the evidence taken by them. When confirmation of a report is refused upon this ground, we are of opinion that new commissioners should always be appointed.

Assuming, as we do in this case, that the commissioners acted conscientiously and in accordance with their best judgment, and have given the subject the careful attention that its importance demands, it is not probable that, upon the same or similar testimony to that which was presented before, they will to any appreciable extent modify their former views as to the damage caused by the improvement. The result will be either that they will report substantially the same damages, or, if they report less, that they will do so because they feel constrained by the reason given by the court for resubmitting the question. In the one case, nothing will be gained by the resubmission. In the other, the property owners will not have received, what they are entitled to receive, the free and uncoerced judgment of the commissioners. Of course, when the objection to a report is that the commissioners have adopted a wrong principle in estimating awards for damage, or have otherwise committed legal error, the foregoing remarks do not apply. If, therefore, the order appealed from is to be affirmed, it should be so modified as to provide for resubmission to new commissioners.

As has been remarked, the sole ground upon which the refusal to confirm the report is sought to be sustained is that the commissioners

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

awarded greater damages than the court considered were justified by the evidence. That evidence, in addition to certain maps and profiles, consisted wholly of opinion evidence of real estate expert witnesses, all of whom, as they state in qualifying, have been largely engaged in acting as expert witnesses in similar proceedings. The property owners and the city each called three witnesses of this character. No one who has had experience in such matters will be surprised to find that the estimates of these witnesses differ beyond the hope of reconciliation, and that all those called by the property owners place the damage at a very high figure, ranging from $92,627 to $124,625, while those called by the city estimate the damage at a comparatively low figure, ranging from $16,572 to $19,385. In the face of so great differences of expert judgment, the task committed to the commissioners of making a just and true estimate of the damages was no light one. It was open to them, of course, as it is to the court, to examine critically the basis upon which each witness arrived at the results he testified to, and the reasons given by each for the judgment at which he arrived. It was also open to them, and was their duty, as it was not the duty of the court, to personally view the premises and to consider the estimates of the widely differing experts in the light of the physical location and condition of the property.

Pursuing this course, the commissioners declined to accept the judgment of any of the witnesses at its face value, and arrived at an estimate of damage of $47,500. This sum is some $63,000 less than the damage which would be arrived at by averaging the estimates of the property owners' witnesses, and about $30,000 more than would be arrived at by averaging the estimates of the city's witnesses. I am not prepared to say, upon the printed record, without the advantage either of seeing the witnesses or of viewing the property, that this result is so apparently erroneous as to warrant the resubmission of the case, which must result in greatly increased delay, expense, and loss of interest. It cannot be expected that upon such resubmission the estimates of the expert witnesses will be more nearly in accord. Indeed, experience would lead us to expect that their estimates will be, if anything, more widely apart.

The property consists of a large, irregular plot lying between Ft. George avenue and a public park, with a frontage of 380.12 feet on Ft. George avenue and 348.66 feet on the public park. In depth the plat is 364.88 feet on its northerly side, and 261.40 feet on its southerly side. For about 100 feet back from Ft. George avenue the land is nearly level, or can easily be made so. From that point it drops away rapidly towards the park, so that in the last 166 feet there is a difference of elevation amounting to 90 feet. It is manifest that it is difficult to estimate, with exactitude, the present value of such a plot, which value, at best, is largely speculative, depending upon the belief which the estimator entertains as to the probable development of the surrounding property; for in this neighborhood, which is but sparsely populated, and as yet undeveloped, there are not to be found the criteria for testing values which are readily found in built-up and developed neighborhoods. And I do not doubt that the difference in

the opinions expressed by the expert witnesses as to the value of the property, before the improvement and after, are to be accounted for, in large measure, by differences of opinion as to the future development of the locality.

It was testified to, and the claim seems to be reasonable, that an important element in the value of a plot of this location, size, and contour is its ownership as a single plot, which, under easily conceivable circumstances, might make it more desirable than it would be if cut up into smaller parcels; and one of the elements of value testified to by the owner's witnesses was the enhancement of the value, while owned as one plot, by what is termed "plottage." The improvement which rendered this proceeding necessary is the acquisition in fee, for the purpose of laying a sewer, of a strip of land running diagonally directly through the property, and separating it into two unconnected plots, each more irregular in outline than the single plot had been. That this must have a very considerable effect upon the value of the plot seems to be manifest. There can be no doubt of the power of the court to refuse to confirm a report, either for overvaluation or for undervaluation, and in some cases it is a duty so to do. The rules governing the exercise of that power have been often stated. They are similar to the rules controlling the setting aside of a verdict for excessive or inadequate damages, for the position of commissioners of estimate relative to questions of fact is analogous to that of a jury in a common-law action.

The rule to be deduced from the authorities is that the findings of commissioners will not be disturbed, unless it is apparent that injustice has been done, or they have overlooked some material feature of the case, or have proceeded upon an erroneous principle, or been influenced by prejudice or passion. Harlem River & P. R. Co. v. Reynolds, 50 App. Div. 575, 64 N. Y. Supp. 199; Matter of N. Y. El. R. Co., 12 N. Y. Supp. 858;[1] Manhattan R. Co. v. Comstock, 74 App. Div. 341, 70 N. Y. Supp. 416. And it is not sufficient that the court, upon reading the evidence (but without the advantage of a view), would have arrived at a different result. It is not contended in the present case that the report is tainted with any of the vices above enumerated, except that the award for damages is too large. Perhaps it is; but upon the whole case it seems to me that there is evidence to support the findings of the commissioners, and that their award is not so obviously unreasonable that it ought not to be confirmed.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion to confirm the report of the commissioners granted.

INGRAHAM, P. J. [1] I agree with Mr. Justice SCOTT that, where confirmation of a report is refused upon the ground stated by the learned justice at Special Term, new commissioners should always be appointed, and, if the refusal to confirm the award is affirmed, that the order should be modified by appointing new commissioners, in-

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 58 Hun, 611.

stead of sending it back to the commissioners whose award was not confirmed. An examination of the expert testimony in this case seems to show that the very great difference of opinion was based largely upon a difference as to what this property could be in the future used for, and what it could some time in the future be sold for, rather than its present market value.

[2] In view of the testimony before the commissioners, and what seems to me to be the absence of any real evidence as to what the actual value of the property is, I do not think it was error for the court to provide that the question as to the value of the property taken should be determined by new commissioners, when the evidence as to what the property would actually sell for to-day, rather than its prospective value in the future, could be more satisfactorily established. What I think the commissioners had to determine is its present value, what it would now sell for, and not what real estate experts think it would sell for at some future time.

I think, therefore, that the order should be modified, by sending the proceeding back to new commissioners, to be appointed by the order, and, as modified, affirmed, with $10 costs and disbursements.

LAUGHLIN, CLARKE, and MILLER, JJ., concur with INGRAHAM, P. J.