In re EAST 161ST STREET IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   December 5, 1913.)

1. EVIDENCE (§ 142*)—OPINION EVIDENCE—MARKET VALUE.

The market value of lands taken in invitum must be shown by the testimony of experts familiar with the uses for which the land is adapted, or by proof of the income derived therefrom, and not by proving the price paid for lands in the vicinity at private sale.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423;  Dec. Dig. § 142.*]

2. EVIDENCE (§ 558*)—OPINION EVIDENCE—CROSS-EXAMINATION.

The market value of land indicated by sales may be shown on the cross-examination of an expert testifying as to its value.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2377, 2379; Dec. Dig. § 558.*]

3. EMINENT DOMAIN (§ 238*)—COMPENSATION—ASSESSMENT BY COMMISSIONERS —REVIEW.

A court of review will not reverse the determination of commissioners for errors in exclusion of evidence, unless they have proceeded upon a wrong principle or theory to the prejudice of the appellant, since they are authorized to view the premises and are not required to act solely upon testimony at the hearing.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 614, 619, 658–660, 666, 668, 669, 671, 673, 674, 687; Dec. Dig. § 238.*]

4. EMINENT DOMAIN (§ 237*)—COMPENSATION—ASSESSMENT BY COMMISSIONERS —REVIEW.

Although the court does not ordinarily interfere with the determination of commissioners on questions of valuation, yet their determination is not final, and the court is not obliged to confirm their reports, if it appears to be unequitable and unjust.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604– 613;  Dec. Dig. § 237.*]

5. EMINENT DOMAIN (§ 167*)—VALUATION BY COMMISSIONERS—FINALITY.

Under the Constitution and statutes, the just compensation to be paid to owners whose property is condemned by the city must ultimately be determined by the commissioners of estimate.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 451–456; Dec. Dig. § 167.*]

6. EMINENT DOMAIN (§ 237*)—COMPENSATION—REPORT OF COMMISSIONERS— CONFIRMATION.

Under Greater New York Charter (Laws 1901, c. 466) § 988, providing for objections to the report of commissioners of estimate and for an appeal from an order of confirmation, to be heard upon the evidence taken before the commissioners, certified by the court at Special Term or agreed on by the parties, and be determined upon the merits both as to matters of law and fact, where testimony offered by a party did not show any reasonable basis for the award claimed to constitute just compensation, objections to the report should have been sustained and new commissioners appointed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604– 613;  Dec. Dig. § 237.*]

Appeal from Special Term, New York County.

Application by the City of New York to condemn lands for East 161st Street as widened from Brook Avenue to Third Avenue in the

Twenty-Third Ward, City of New York. From an order confirming an award made by the Commissioners of Estimate, John C. Keintz and another, owners, appeal. Order reversed, and matter referred back to new Commissioners.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Benjamin Trapnell, of New York City, for appellants.

John J. Kearney, of New York City (Joel J. Squier and Charles A. Molloy, both of New York City, on the brief), for respondent City of New York.

LAUGHLIN, J. The land appropriated by the city for widening East 161st street between the points in question embraced a strip in a single block on the northerly side of East 161st street of the width of 33.25 feet on Third avenue, widening toward the west to the width of about 37 feet at Brook avenue, and comprising three damage parcels, only one of which is involved in the appeal. Damage parcel No. 3, commencing on Third avenue with the width of 33.25 feet, extends westerly 139.42 feet along the northerly line of East 161st street, and is of the width of 35.95 feet at its westerly line.

The preliminary estimate filed on November 26, 1910, made for this parcel was $70,374. The appellants duly filed objections to the award, on the grounds that it was inadequate, unjust, contrary to the evidence, based upon the testimony of one not qualified as an expert, and greatly less than the estimates of the other experts called by the city, and was so inadequate and unequal as to indicate prejudice and partiality on the part of the commissioners and to constitute a confiscation by taking without just compensation. The commissioners, after hearing the objections, filed their final report in which they awarded for this parcel the sum of $71,231.

Six witnesses, one in behalf of the property owners and five in behalf of the city, testified before the commissioners with respect to the value of this parcel. The first testimony on the question of value was taken on June 7, 1909. The expert for the appellants testified first, and gave it as his opinion that this parcel was of the market value of $169,169. The city then called three witnesses, the last of whose testimony was concluded on the 29th day of December, 1909. They respectively placed a value of $87,785.96, $90,600, and $90,621 on the parcel. It next appears in the record that at a meeting of the commissioners on the 19th of January, 1910, it was announced that one of the commissioners had resigned. Another commissioner was appointed in his place and qualified on the 27th of April, 1910. The record shows that the newly appointed commissioner thereafter examined the testimony theretofore given, and viewed the premises. It then shows a meeting of the commissioners on June 6, 1910, at which the deputy tax commissioner, who had charge of examining and assessing real estate in the district in which the parcel in question was located, and who examined and estimated the value of the parcel in question in the fall of 1909 for the purpose of making the return of the taxable property for the year 1910 and the valuations

thereof, was called as a witness for the city.  He was permitted to testify, without objection, that in his opinion the fair market value of this parcel on the day title vested in the city was $75,000.  It is erroneously argued that he was permitted to testify to the valuation at which he assessed it.  On the 18th of July, 1910, the city called one Olpp, who testified that in his opinion the market value of this parcel at the time title vested in the city was only $70,000.

The learned counsel for the appellants contends that the award shows that the commissioners virtually accepted the testimony of Olpp, and that facts were developed on his cross-examination, both with respect to the manner in which he arrived at the valuation and concerning the extent of his knowledge of sales and valuations of real estate, which show that his opinion was not entitled to very much weight.  Particular stress is laid upon the fact that, as a basis for determining the value of the premises in question, he assumed that an interior lot fronting on Third evenue in the same block, of the dimensions of 25 feet frontage by 100 feet in depth, was of the value of $25,000, or $10 a square foot, and that he then added to that valuation, on account of this parcel being on a corner and of a greater width and depth, thus arriving at a total valuation of $70,000.  The evidence shows two sales of an interior lot of the ordinary dimensions, viz., 25 feet by 100 feet, on Third avenue in the same block and only 50 feet north of the parcel in question, one in the month of January, 1907, for $30,000, and the other in the month of March, 1909, for $33,000.  This witness, Olpp, excluded from consideration those two sales.  There was no evidence tending to show that the sales were not at what the parties thereto deemed to be the fair market value, and the reasons assigned by Olpp for exceptional value to the lots so sold applies with equal force to the parcel in question.

[1, 2] The rule is that the market value of lands taken in invitum must be shown by the testimony of experts familiar with the uses for which the lands are adapted, or by the income derived therefrom, and not by proving the consideration paid for the purchase of lands in the vicinity at private sale.  Matter of Thompson, 127 N. Y. 463, 28 N. E. 389, 14 L. R. A. 52; Matter of City of New York (Blackwell's Island Bridge) 118 App. Div. 272, 274, 103 N. Y. Supp. 441, and cases cited.  But the market value indicated by sales may be shown on the cross-examination of an expert, and it is manifest that opinion evidence, if in conflict with the general trend of sales of premises in the vicinity, would be of little value.  The other experts called by the city, with the exception of the deputy tax commissioner, arrived at their valuations in the same manner as Olpp; that is to say, by taking an interior lot of ordinary dimensions as the unit of value.  But each of them took $30,000 as the unit of value for an interior lot 25 feet by 100 feet, and gave weight to the two sales mentioned.  It is stated in the points for the city that the testimony of the deputy tax commissioner is not relied upon to sustain the award, but it is therein claimed that it cannot be used as a basis for attacking the award.  Without that testimony, the record shows that the city first met the testimony of the appellants' expert by the testimony of two experts whose com-

petency was not questioned, and on whose testimony the city was then contending before the commissioners that the value of the parcel in question was between $87,785.96 and $90,621, and then, after a lapse of something over six months, it called the witness Olpp, and by his testimony attempted to reduce the valuation nearly $20,000, or about 20 per centum.

[3] The only ruling of the commissioners, as disclosed by the record, with respect to the reception or rejection of evidence other than in receiving the evidence of the deputy tax commissioner to which reference has been made, is in receiving evidence as to the amount which the appellants paid for the parcel nearly seven years before, since which time it appeared that the conditions affecting valuations had undergone marked changes; but the rule is that a court of review will not reverse the determination of the commissioners for errors in the exclusion or reception of evidence, unless the commissioners have proceeded upon a wrong principle or theory to the prejudice of the appellant, and the reason for the rule is that the commissioners are authorized to view the premises and to act upon their own view and upon information received otherwise than by testimony given on the hearings. Matter of City of New York (Blackwell's Island Bridge) 198 N. Y. 84, 91 N. E. 278, 139 Am. St. Rep. 791, 41 L. R. A. (N. S.) 411.

[4] Although the courts do not ordinarily interfere with the determination of the commissioners on questions of valuation, yet their determination is not final, and the court is not obliged to confirm their report, if it appears to be "inequitable and unjust." Matter of Commissioners of Public Parks, 47 Hun, 302; Matter of City of New York (Titus Street) 139 App. Div. 238, 123 N. Y. Supp. 1018.

[5, 6] The Legislature has provided for filing objections to the report of the commissioners and for an appeal to this court from an order confirming it, and has directed that such an appeal "shall be heard upon the evidence taken before the commissioners, or such part or portion thereof as the court at Special Term may certify, or the parties to said appeal may agree upon, as sufficient to present the merits of the questions in respect to which such appeal shall be had," and that "such appeal shall be heard and determined by the Appellate Division upon the merits both as to matters of law and fact." Greater New York Charter (Laws 1901, c. 466) § 988; Matter of Mayor (Trinity Ave.) 81 App. Div. 215, 80 N. Y. Supp. 732. Under the Constitution and the statutory law applicable, the just compensation to be paid to the appellants must ultimately be determined by the commissioners of estimate; but the court has a duty to perform, both to the public and to the property owners, to see not merely that the law is followed, but that justice is done. While therefore the just compensation to be made is not to be determined exclusively by the testimony before the commissioners, yet, when testimony is offered by a party, it should show some reasonable basis for the award which the party offering it claims would constitute just compensation (see Matter of Titus Street, supra); but we do not say that the commissioners are necessarily confined or limited by the valuations given by the experts, and the court has frequently sustained awards for less than the

valuation given by any expert. See Matter of Daly, 26 App. Div. 326, 49 N. Y. Supp. 795; Matter of Joseph Rodman Drak Park, 134 App. Div. 965, 119 N. Y. Supp. 1138, affirmed 199 N. Y. 531, 92 N. E. 1088; Matter of Crotona Park Addition, 148 App. Div. 890, 132 N. Y. Supp. 1129; Matter of Simmons, 132 App. Div. 574, 116 N. Y. Supp. 952. We are of opinion that the objections of the appellants to the report of the commissioners should have been sustained, and new commissioners should have been appointed. Matter of Collis, 144 App. Div. 382, 129 N. Y. Supp. 214.

It follows therefore that the order should be reversed, with costs, and motion for confirmation denied, and the matter referred back to new commissioners to be named in the order of this court. All concur.