1 N.Y.2d 428 (1956)
In the Matter of the City of New York, Respondent, Relative to Acquiring Title to Real Property, Bounded by West 100th Street, and Other Streets in the Borough of Manhattan, Required for a Project Known as West Park (Manhattan Town) Clearance Project. A. & W. Realty Corp. et al., Appellants, et al., Claimants.
Court of Appeals of the State of New York.
Argued March 15, 1956.
Decided July 11, 1956.
Samuel Goldstein and Bernard H. Friedman for Marian Maliszewski and others, appellants. Bernard L. Bermant for City Realty Corporation and others, appellants. Sidney Z. Searles, Sidney O. Raphael and William Levin for Murray Lewis and others, appellants. Irwin Isaacs for Joseph H. N. Jones, appellant. William J. Roswick and Harold L. Leddy for Max Siegel and others, appellants. Morris T. Hamburg and Edwin C. Hamburg for Jul-Hy Realty Corp., appellant. Sidney Mormar for Prudent Homes, Inc., appellant. Peter H. Brandt, Hubert J. Brandt and Belle G. Kopel for Albert Stein, appellant. Arthur H. Goldberg for A. & W. Realty Corp., appellant.
Peter Campbell Brown, Corporation Counsel (Milton H. Harris, Harry E. O'Donnell and Benjamin Offner of counsel), for respondent.
CONWAY, Ch. J., DESMOND AND DYE, JJ., concur with FULD, J., VAN VOORHIS, J., dissents in an opinion in which FROESSEL, J., concurs; BURKE, J., taking no part.
*430 FULD, J.
In this condemnation proceeding, instituted by the City of New York as part of a slum clearance project under section 72-k of the General Municipal Law and Title I of the National Housing Act of 1949 (63 U. S. Stat. 413), 18 claimants appeal from the order of the Appellate Division reducing the awards made by Special Term. Since the trial court's findings of value were reversed and new findings made, we are called upon to review the evidence and choose between the discrepant findings. (Civ. Prac. Act, § 605; see People ex rel. MacCracken v. Miller, 291 N.Y. 55, 61.) We repudiate at the outset the contention of some of the claimants that the Appellate Division was empowered to make new findings as to value only if the trial *431 court had adopted an erroneous theory or had valued the property at so excessive a figure as to be shocking. (See, e.g., Matter of City of New York [Sound View Houses  A. F. & G. Realty Corp.], 308 N.Y. 814.) Consequently, we turn to claimants' principal point, that the weight of evidence supports the findings made by Special Term or, more precisely, that there was no evidence to support the new findings reducing the awards.
The area involved in the proceeding covered six blocks in Manhattan, extending from West 97th Street to West 100th Street, between Amsterdam Avenue and Central Park West, and comprised very different types of properties. There were retail business shops and tenement houses on Amsterdam and Columbus Avenues, large elevator apartment houses on Central Park West and tenements on the side streets. In fixing the values and making the awards, Special Term employed a capitalization of income method. In so doing, the court, having regard for the variant types of properties taken, used a rate of 9% on side street property, a rate of 8% on property fronting on Amsterdam Avenue and on Columbus Avenue and a rate of 7½% on the apartment house property on Central Park West. As already noted, the Appellate Division reduced the awards and, while it may not always be easy, or even possible, to ascertain the basis for such action, there can be no doubt about it in this case for the Appellate Division actually explained its reason for reducing the awards. "We think," wrote the court, "that in the present case the awards for buildings were excessive in the instances where we modify, and that this result was effected because in estimating building values based on a capitalization of income method a rate was used that did not duly consider the general depreciated condition of the area." The City acknowledges that the trial court's findings of net rental value were not disturbed. It follows, therefore, that, in determining whether the findings of Special Term or the Appellate Division should be accepted, we must examine the record to ascertain which court's conclusion as to capitalization rates is correct.
The capitalization rates adopted by Special Term were those testified to and used by the City's expert, Leonard Lavelle. Indeed, Judge EDER, who presided at the trial, observed during a hearing on objections that he had utilized a 9% rate for "tenement house" properties because that was the view of the City's witnesses, even though his own view was that it should have been *432 higher. However, he went on to say that he would not "substitute" his "judgment" for theirs, particularly in view of their great experience.
To make explicit what we have already intimated, there is no evidence in the record before us to justify the Appellate Division's modification of the capitalization rates adopted by Special Term. Despite the fact that Special Term selected the highest rate testified to by the City's experts, the Appellate Division modified upward the capitalization rate of every parcel here under review. Since the claimants' experts had all utilized lower rates than those adopted by Special Term on the strength of the testimony of the City's experts, the Appellate Division's adoption of rates higher than those used by Special Term amounts to nothing more or less than a finding, on this crucial valuation issue, of a rate higher than is to be found anywhere in the evidence.
While we recognize that a trier of facts is not bound by opinion testimony, even when uncontradicted (see Commercial Cas. Ins. Co. v. Roman, 269 N.Y. 451, 456), that does not mean that findings may be made in a valuation case, predicated solely and simply on the subjective judgment of judge or court, without any basis in the evidence. Awards higher or lower than the estimates of any of the opposing witnesses have been sustained where made by commissioners who were by statute authorized to act "upon information received otherwise than by testimony given on the hearings." (Matter of City of New York [East 161st St.], 159 App. Div. 662, 666.) The right, possessed by a judge or other trier of fact, to view the premises is sometimes given as an added justification for the power to disregard all the expert testimony. (See Matter of City of New York [East 161st St.], supra, 159 App. Div. 662.) However, we have expressly held that, where the proceeding is brought under a statute which limits the trier of fact to a judicial consideration of the evidence, the function of the view is merely to enable him to understand and apply the testimony and not to act on his individual opinion in disregard of the evidence presented. (See People ex rel. Uvalde Asphalt Paving Co. v. Seaman, 217 N.Y. 70, 74-75; Matter of Gibert, 176 App. Div. 850. And compare People ex rel. Olin v. Hennessy, 159 App. Div. 814, 817, with Matter of City of New York [East 161st St.], supra, 159 App. Div. 662, 666-667.)
*433 In a case such as the one before us, there can be no doubt that the trial court, and the Appellate Division as well, are bound by the testimony in the record. (Administrative Code of City of New York, § B15-19.0; see People ex rel. Uvalde Asphalt Paving Co. v. Seaman, supra, 217 N.Y. 70, 74.) This does not mean, however, that an award may never be higher or lower than the experts' estimates of value; it is only requisite that there be evidence at hand to support the value actually found by the court. If, for instance, on the day before the taking the property had been purchased for a price below the lowest figure suggested by the City, and if other testimony were present establishing the sale as a fair indication of value, a court would be warranted in selecting a figure lower than that given by the expert. It is not, though, "at liberty to find an arbitrary sum not sustained by any evidence in the record." (People ex rel. Hallock v. Hennessy, 152 App. Div. 767, 770.)
To sustain its finding of rates higher than those offered by any expert, the Appellate Division says that the area was "substandard" and "slum" and that "a rate was used that did not duly consider [its] general depreciated condition"; and to these elements the City adds "the assessed valuations and the price level of open market sales in the area." However, the evidence in this record, such factors as those noted, simply cannot be translated into a capitalization rate, or support one, higher than that to which the witnesses testified. The rate of 9%, given by the City's experts for side street properties, unquestionably gave weight to existing slum conditions and current price levels in the area. Their testimony plainly reveals that they were fully aware that they were dealing with "tenements" in "depressed and slum" sections, and the City does not, of course, suggest that in this slum clearance proceeding its witnesses assumed, contrary to the fact, that the properties were located in other than a depressed area.
In final analysis, since there is no evidence to support the higher percentages employed by the Appellate Division, the conclusion is inescapable that that court substituted capitalization rates, based on its own subjective collective mind, for those testified to by the experts.
The order of the Appellate Division should be reversed and the decree of Special Term reinstated, with costs in this court and in the Appellate Division.
*434 VAN VOORHIS, J. (dissenting in part).
Except in case of damage parcels 90 and 190, which contain modern apartment houses, the weight of the evidence appears to sustain the valuations of the Appellate Division. An area of six blocks, extending from the north side of West 97th Street to West 100th Street, between Amsterdam Avenue and Central Park West, has been condemned as substandard and unsanitary. What remains of the economic life of the properties is short for that reason. The trial court capitalized the net income from properties on the side streets at 9%; on Columbus and Amsterdam Avenues at 8%; and on Central Park West at 7½%. On the hearing of objections to the tentative valuations, the trial court said that these capitalization rates, derived from the testimony of one of the city's experts, were "lower than in any proceeding that I have ever had before. I am talking now with respect to tenement houses. In my opinion at least * * * ten per cent of this award was higher than I would have given if they hadn't capitalized their appraisal of the value of these properties at nine per cent. That was their testimony."
Then, after stating in accordance with the established law that "the court can disregard the experts' testimony, if in his opinion it doesn't square with his judgment" (Matter of City of New York [School Site  Esam Holding Corp.], 222 App. Div. 554, 559, affd. 250 N.Y. 588; Matter of City of New York [East 36th St.], 168 App. Div. 463, 464, affd. 217 N.Y. 621), the trial court followed this real estate expert by using lower percentages (resulting in higher valuations) than he had said that he thought were correct. In modifying, the Appellate Division reduced these awards into the range where they would have been if the Trial Justice had not deferred to the capitalization rates given by this expert witness. But the circumstance that the capitalization percentages would have ranged from 8% to 10¼%, if one were to capitalize the net rentals so as to result in the awards as modified by the Appellate Division, does not demonstrate that the Appellate Division followed exclusively that method of valuation in reaching its results. The Appellate Division said:
"While we are reluctant to disturb awards in condemnation made by an able and experienced Special Term Judge who has seen and heard the witnesses and viewed the properties, we believe that it is our duty to do so if we find that the Special Term has failed to give the conflicting evidence the relative weight that *435 it should have and thus has arrived at values which are excessive or inadequate (Matter of City of New York [Newton Cr.], 284 N.Y. 493, 497). We think that in the present case the awards for buildings were excessive in the instances where we modify, and that this result was effected because in estimating building values based on a capitalization of income method a rate was used that did not duly consider the general depreciated condition of the area. Income remained high in this depreciated section because the property was almost universally used for rooming purposes and space was at a premium. But the neighborhood was substandard, causing the property to be taken for slum clearance. The last factor would have to be a decided influence on the prices that buyers would have paid for these properties.
"Accordingly, we modify the decree by reducing the building values as follows: * * *"
It is quite evident that the schedule of modified awards which follows this statement was based by the Appellate Division upon all of the valuation factors in the evidence, including sales value, assessed value, cost value, economic value, and so forth, and not alone upon capitalization of net rentals. This is indicated, among other matters, by the statement in the Appellate Division's opinion that it is its duty to modify "if we find that the Special Term has failed to give the conflicting evidence the relative weight that it should have and thus has arrived at values which are excessive or inadequate". If the only element of value which actuated the Appellate Division had been the expert opinion testimony of capitalization percentages, reference would not have been made to "the conflicting evidence". There was no conflict in the testimony about capitalization percentages which could have resulted in reducing these awards. The Appellate Division found what it deemed to be the correct values based upon all of the evidence. The circumstance that when expressed in terms of capitalization percentages, such percentages exceeded those to which any expert testified, does not signify that the Appellate Division went beyond the record in rendering its decision. No expert witness testified to a capital percentage in excess of 9%; and if that were all that the Appellate Division went upon, it would have found no conflict in the evidence. The conflict arises from the elements of value supplied by the purchase prices, sales, assessed values and other factors used in valuation of real property. Consequently the bare circumstance *436 that no expert witness testified to capitalization percentages as high as these does not require reversal. The Appellate Division's awards exceeded the valuations placed upon these properties by some of the experts who testified. What the Appellate Division did more nearly accords with the realities.
The final order entered upon the decision of the Appellate Division should be modified by reinstating the awards of the trial court with respect to damage parcels 90 and 190 and, as so modified, should be affirmed.
Order reversed, etc.