Fuld, J.
In this condemnation proceeding, instituted by the City of New York as part of a slum clearance project under section 72-k of the General Municipal Law and Title I of the National Housing Act of 1949 (63 U. S. Stat. 413), 18 claimants appeal from the order of the Appellate Division reducing the awards made by Special Term. Since the trial court’s findings of value were reversed and new findings made, we are called upon to review the evidence and choose between the discrepant findings. (Civ. Prac. Act, § 605; see People ex rel. MacCracken v. Miller, 291 N. Y. 55, 61.) We repudiate at the outset the contention of some of the claimants that the Appellate Division was empowered to make new findings as to value only if the trial *431 court had adopted an erroneous theory or had valued the property at so excessive a figure as to be shocking. (See, e. g., Matter of City of New York [Sound View Houses — A. F. & G. Realty Corp.], 308 N. Y. 814.) Consequently, we turn to claimants’ principal point, that the weight of evidence supports the findings made by Special Term or, more precisely, that there was no evidence to support the new findings reducing the awards.
The area involved in the proceeding covered six blocks in Manhattan, extending from West 97th Street to West 100th Street, between Amsterdam Avenue and Central Park West, and comprised very different types of properties. There were retail business shops and tenement houses on Amsterdam and Columbus Avenues, large elevator apartment houses on Central Park West and tenements on the side streets. In fixing the values and making the awards, Special Term employed a capitalization of income method. In so doing, the court, having regard for the variant types of properties taken, used a rate of 9% on side street property, a rate of 8% on property fronting on Amsterdam Avenue and on Columbus Avenue and a rate of 7%% on the apartment house property on Central Park West. As already noted, the Appellate Division reduced the awards and, while it may not always be easy, or even possible, to ascertain the basis for such action, there can be no doubt about it in this case for the Appellate Division actually explained its reason for reducing the awards. “ We think,” wrote the court, “ that in the present case the awards for buildings were excessive in the instances where we modify, and that this result was effected because in estimating building values based on a capitalization of income method a rate was used that did not duly consider the general depreciated condition of the area.’’ The City acknowledges that the trial court’s findings of net rental value were not disturbed. It follows, therefore, that, in determining whether the findings of Special Term or the Appellate Division should be accepted, we must examine the record to ascertain which court’s conclusion as to capitalization rates is correct.
The capitalization rates adopted by Special Term were those testified to and used by the City’s expert, Leonard Lavelle. Indeed, Judge Edeb., who presided at the trial, observed during a hearing on objections that he had utilized a 9% rate for “ tenement house ” properties because that was the view of the City’s witnesses, even though his own view was that it should have been *432 higher. However, he went on to say that he would not “ substitute ” his “ judgment ” for theirs, particularly in view of their great experience.
To make explicit what we have already intimated, there is no evidence in the record before us to justify the Appellate Division’s modification of the capitalization rates adopted by Special Term. Despite the fact that Special Term selected the highest rate testified to by the City’s experts, the Appellate Division modified upward the capitalization rate of every parcel here under review. Since the claimants ’ experts had all utilized lower rates than those adopted by Special Term on the strength of the testimony of the City’s experts, the Appellate Division’s adoption of rates higher than those used by Special Term amounts to nothing more or less than a finding, on this crucial valuation issue, of a rate higher than is to be found anywhere in the evidence.
While we recognize that a trier of facts is not bound by opinion testimony, even when uncontradicted (see Commercial Cas. Ins. Co. v. Roman, 269 N. Y. 451, 456), that does not mean that findings may be made in a valuation case, predicated solely and simply on the subjective judgment of judge or court, without any basis in the evidence. Awards higher or lower than the estimates of any of the opposing witnesses have been sustained where made by commissioners who were by statute authorized to act “ upon information received otherwise than by testimony given on the hearings.” (Matter of City of New York, [East 161st St.], 159 App. Div. 662, 666.) The right, possessed by a judge or other trier of fact, to view the premises is sometimes given as an added justification for the power to disregard all the expert testimony. (See Matter of City of New York [East 161st St.], supra, 159 App. Div. 662.) However, we have expressly held that, where the proceeding is brought under a statute which limits the trier of fact to a judicial consideration of the evidence, the function of the view is merely to enable him to understand and apply the testimony and not to act on his individual opinion in disregard of the evidence presented. (See People ex rel. Uvalde Asphalt Paving Co. v. Seaman, 217 N. Y. 70, 74-75; Matter of Gibert, 176 App. Div. 850. And compare People ex rel. Olin v. Hennessy, 159 App. Div. 814, 817, with Matter of City of New York [East 161st St.], supra, 159 App. Div. 662, 666-667.)
*433 In a case such as the one before us, there can be no doubt that the trial court, and the Appellate Division as well, are bound by the testimony in the record. (Administrative Code of City of New York, § B15-19.0; see People ex rel. Uvalde Asphalt Paving Co. v. Seaman, supra, 217 N. Y. 70, 74.) This does not mean, however, that an award may never be higher or lower than The experts’ estimates of value; it is only requisite that there be evidence at hand to support the value actually found by the court. If, for instance, on the day before the taking the property had been purchased for a price below the lowest figure suggested by the City, and if other testimony were present establishing the sale as a fair indication of value, a court would be warranted in selecting a figure lower than that given by the expert. It is not, though, ‘1 at liberty to find an arbitrary sum not sustained by any evidence in the record.” (People ex rel. Hallock v. Hennessy, 152 App. Div. 767, 770.)
To sustain its finding of rates higher than those offered by any expert, the Appellate Division says that the area was “ substandard ” and “ slum ” and that “ a rate was used that did not duly consider [its] general depreciated condition and to these elements the City adds ‘ ‘ the assessed valuations and the price level of open market sales in the area. ’ ’ However, the evidence in this record, such factors as those noted, simply cannot be translated into a capitalization rate, or support one, higher than that to which the witnesses testified. The rate of 9%, given by the City’s experts for side street properties, unquestionably gave weight to existing slum conditions and current price levels in the area. Their testimony plainly reveals that they were fully aware that they were dealing with “ tenements ” in “ depressed and slum ” sections, and the City does not, of course, suggest that in this slum clearance proceeding its witnesses assumed, contrary to the fact, that the properties were located in other than a depressed area.
In final analysis, since there is no evidence to support the higher percentages employed by the Appellate Division, the conclusion is inescapable that that court substituted capitalization rates, based on its own subjective collective mind, for those testified to by the experts.
The order of the Appellate Division should be reversed and the decree of Special Term reinstated, with costs in this court and in the Appellate Division.