DONALD L. SPARKS, Individually and as Administrator of the Estate of ARLENE I. SPARKS, Deceased, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 44929.)

Fourth Department, May 30, 1975

*Louis J. Lefkowitz, Attorney-General (Vernon Stuart* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Congdon, Congdon & Perreault (Benjamin C. Perreault* of counsel), for respondent-appellant.

MOULE, J. The State of New York appeals and claimants cross-appeal from a judgment of the Court of Claims, which awarded claimants $47,620, with interest, constituting a total sum of $73,218.40, as direct damages for the appropriation of their farm property in Cattaraugus County. This case was before us on a previous occasion at which time we decided the

questions of law involved but remitted for a new trial because the Court of Claims' decision was neither within the range of expert testimony nor supported by the evidence *(Sparks v State of New York,* 39 AD2d 822).

Claimants owned 114.111 acres of land situated entirely within Allegany State Park. Several years before the appropriation of any of claimants' land, it became apparent that at least one half of their land would be appropriated in connection with a Federally-funded program to build the Kinzua Dam and to create a reservoir and perimeter road.

At a time well after the Federal project began, but shortly before the appropriation of claimants' property, the State decided to acquire the remainder of claimants' land for general park purposes. As a result, on December 10, 1964 two simultaneous appropriations were made. The first, made by the State Department of Public Works, appropriated 57.287 acres of claimants' property for use in the Federal project. The second, made by the Allegany State Park Commission pursuant to section 676-a of the Conservation Law, appropriated the remaining 56.824 acres. This latter parcel was identified as Parcel 80.

Claimants filed a claim in February, 1965 and at a trial in May, 1970 asserted that they were entitled to an enhanced value for their property in Parcel 80 due to its proximity to the reservoir and perimeter road. The State asserted that there was no enhancement and, therefore, presented no evidence as to any enhanced value of the land. The enhanced value which claimants sought included an increase in the value of the property because of certain sand and gravel borrow deposits located upon 12.89 acres of Parcel 80. The increased value attributed to these deposits was predicated upon its proximity to the Federal project.

The Court of Claims awarded $20,500 damages in connection with the property appropriated for the Federal project and awarded $47,620 for Parcel 80, taking into account its enhanced value. However, no increased value for the borrow deposits was allowed because the claimants' appraiser used an unacceptable valuation technique.

Upon appeals by both parties, we affirmed the award of $20,500 for the property appropriated for the Federal project. In a memorandum decision *(Sparks v State of New York,* 39 AD2d 822, *supra),* we concluded that claimants were entitled to an enhanced valuation for Parcel 80 and that this included

an increased value attributed to the borrow deposits. Concerning the borrow deposits, however, it was determined that this value must be established by introducing comparable sales of land that contained borrow. Since the State appraiser had not considered enhanced value, his appraisal was found to be inadmissible. This left the court with only the claimants' appraiser's testimony to determine the value of Parcel 80. We found that this did not contain comparable sales which included independent evidence supporting the court's award. We, therefore, remitted the case for a new trial on damages suffered as a result of the appropriation of Parcel 80.

Upon the retrial, claimants' appraiser subdivided Parcel 80 into four distinct topographical categories; commercial or residential front land, 4.13 acres; open seasonal residential-recreational area, 12.89 acres; east and west wooded seasonal residential-recreational areas, 31.304 acres, and west woods steep area, 8.5 acres. He added only two comparable sales to his prior comparables to determine the enhanced value of these areas excluding the increased value attributable to the borrow deposits. He also introduced six new comparables in order to establish the increased value of the subject because of the borrow deposits which were located entirely upon the 12.89 acres of open seasonal residential-recreational property. His total value for Parcel 80 was $70,900.

The State appraiser did include enhanced value in his appraisal because of proximity to the perimeter road; however, he gave no credit for the borrow deposits, timber on the property, commercial value or for its access to the reservoir and did not subdivide the parcel as claimants' expert did. His total value for the parcel was $4,200.

The Court of Claims made the identical award which it had made on the previous trial; $8,260 for the 4.13-acre area; $14,180 for the 12.89-acre area; $23,480 for the 31.304-acre areas and $1,700 for the 8.5-acre area, resulting in a total of $47,620. However, it did not grant any award for the borrow deposits, on the ground that the State was not obligated to pay for any increase in value which it created by sponsoring the project requiring condemnation (see 4 Nichols, Eminent Domain [3d ed], § 12.21).

The questions of whether the claimants were entitled to an enhanced value for Parcel 80 because of its proximity to the Federally-funded project and whether this enhanced value should have included an increased award due to the presence

of the borrow deposits were determined in claimants' favor upon the prior appeal *(Sparks v State of New York,* 39 AD2d 822, *supra),* and no argument has been made herein which causes us to reconsider our position. Therefore, the only remaining question is whether the trial court improperly predicated its award for damages on claimants' evidence which was essentially identical to that presented upon the previous trial.

Turning to the valuations of the property reached by the Court of Claims, the standard which applies on this appeal is different from that which applied on the first appeal. In the first case, since the State's expert's appraisal was inadmissible because it utilized an erroneous theory of valuation, there was only one appraisal upon which the court could have relied and that appraisal did not, as pointed out in our memorandum, support the values reached by the court. However, now there are two admissible appraisals and, therefore, the standard that an award must be within the range of the expert testimony or supported by independent evidence is applicable (see *Ridgeway Assoc. v State of New York,* 32 AD2d 851).

In valuing the 4.13-acre commercial area claimants' appraiser used comparable Sales 1, 2, 3, 8, 9, 25 and 26. Of these, only comparables 3 and 26 were truly comparable because the others were either a great distance from the subject parcel, were grossly adjusted, or did not take into account substantial differences with the subject parcel. Comparable 3 was adjacent to the same reservoir and road as the subject and was purchased for commercial use, i.e., a restaurant. However, there was a 200% increase for sales-poor frontage, poor topography, and high development costs, made by claimants' appraiser because the comparable had a gully at its road frontage which required a large amount of fill. Although an adjustment was justified, this evidence only supports an adjustment of 100%. Further, because of the three-year delay between the appropriation and the completion of the reservoir, an additional downward adjustment of 15% should also be made to reflect the fact that the property would not immediately benefit from its frontage upon and view of the reservoir. Applying this latter decrease to both Sales 3 and 26, their total adjusted values were $1,620 and $2,528 per acre respectively. Since the court valued the 4.13-acre area at $2,000 per acre, its value was, therefore, within the range of expert testimony and justified by the evidence *(Matter of City of New York [A. & W.*

*Realty Corp.]*, 1 NY2d 428; *Wayside Nurseries v State of New York*, 36 AD2d 212, 214; *Motsiff v State of New York*, 32 AD2d 729, affd 26 NY2d 692).

In reaching the value of the other three topographical categories, which were all residential-recreational areas, claimants' appraiser used as many as 21 comparable sales. Many of these sales occurred before the appropriation, which eliminates the need for a downward adjustment to compensate for the three-year period after the appropriation and before the completion of the Federal project because such sales were not enhanced by the presence of the Federal project. The only comparables in which it appears that the claimants' appraiser made an excessive adjustment were Sales 16 and 17. In those instances, he made a 50% upward adjustment in favor of subject property because of its superior location. Since these comparables had good access to the reservoir and to a boat launch, and lacked only the subject's view of the reservoir and location within the State Park, we find that an upward adjustment of 25% is sufficient. Averaging the claimants' figures for these residential-recreational comparables including the above adjustment, a $954 per acre value is obtained.

No further adjustment was necessary for the 31.304 acres of east and west wooded seasonal residential-recreational land and, thus, it appears that claimants' evidence supported a $954 per acre value for it. The State's appraisal was much lower, $4,200 for the entire property, amounting to about $74 per acre. Therefore, the court's $750 per acre value was within the range of expert testimony and should be affirmed.

In valuing the 8.5-acre area claimants' appraiser used the same comparables as he had for the 31.304-acre area reduced by 40 to 75% because of its steepness. Applying the same average used in valuing the 31.304-acre area and reducing it accordingly, the claimants' appraiser's adjusted average would be $538 per acre. Therefore, the trial court's $200 per acre award was within the range of expert testimony.

However, the value awarded by the court for the 12.89 acres of open seasonal residential-recreational land does not fall within the range of the expert testimony since the court awarded $1,100 per acre and the maximum value testified to by claimants' appraiser was $1,000,[1] or, after taking into

---

1. The actual figure arrived at by claimants' appraiser was $800 per acre higher since it reflected an enhanced value of $800 per acre for borrow deposits located in

account the adjustments made on comparables 16 and 17 was $954. Further, the award did not consider any additional value because of the borrow. Therefore, the case must be again remitted to the Court of Claims unless there is an independent basis in the evidence upon which an award should be made (see Court of Claims Act, § 24; *Motsiff v State of New York,* 32 AD2d 729, affd 26 NY2d 692, *supra).* We believe that there is such basis and that the interests of justice require our computing these figures and resolving this case.

As was stated above in our discussion of the comparables used to value all of the residential-recreational properties, after making some reasonable adjustments in claimants' appraiser's figures and by then averaging the comparables upon which he valued the 12.89-acre area, excluding an increase for the presence of the borrow, a figure of $954 per acre is reached by claimants' appraiser, totaling $12,297. We accept that evidence.

Claimants' appraiser testified that the borrow deposits on the 12.89 acres were throughout the entire property, most being under small hillocks or knolls of deeper deposits located upon a hillside slope. He further testified that the removal of the hillocks and smoothing out of the hillside slope would improve the property for its highest and best use as a residential-recreational area. To establish the increased value of the 12.89 acres because of the borrow deposits, claimants' appraiser introduced six comparables. In each case he broke down the value of the comparable into the value of the raw land and the enhanced value of the borrow. The latter figure he additionally subdivided into immediate borrow reserves, near future borrow reserves, and distant future borrow reserves. Applying this method he arrived at an $800 per acre enhanced value for the subject's 12.89 acres because of the presence of borrow. However, the inclusion of distant future borrow reserves was inconsistent with the highest and best use of this property as a residential-recreational area, because to maintain this use only the removal of the hillocks and the smoothing of the subject's hillside slope would be justified and the use of the future borrow reserves would require removing borrow from the flat terrain. When the value of these distant future reserves is eliminated from the claimants' appraiser's

---

this area. However, since the Court of Claims rejected this enhancement, it cannot be included in the range of expert testimony from which the court made its award.

valuation of the borrow, and the value of the borrow deposits is otherwise calculated by the same method, a value of $545 per acre is arrived at for the borrow deposits. We find that this is a figure substantiated by independent evidence and, accordingly, increase the award for the 12.89 acres of open seasonal residential-recreational land by $7,025.

In conclusion, when the two adjustments arrived at herein for the 12.89-acre area are considered, the proper award for this area is $1,499 per acre instead of the $1,100 per acre found by the Court of Claims. This results in an increase in the total damages awarded for this area from $14,180 to $19,322 or an increase of $5,142. This increase makes the total award to claimants $52,762 rather than $47,620.

The award should be modified by increasing it by $5,142.

MARSH, P. J., CARDAMONE, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with opinion by MOULE, J., and as modified affirmed with costs to claimant.