Hogan, P. J.
These are cross appeals from an order of the County Court, Nassau County, dated August 4, 1972, which confirmed the Second Post Remand Final Report of Commissioners in Condemnation appointed by that court to ascertain and appraise the compensation to he made for property taken by the Town of North Hempstead in eminent domain.
Since title vesting on October 8,1962, this proceeding has had a long and tortuous career which merits, at least, passing reference. This matter was commenced in the County Court in 1962. After protracted hearings by the Commissioners, the County Court confirmed a final report on March 28,1966, fixing damages at $400,599.20. On appeal, this qourt by order dated March 7, *817 1969, reversed and remanded the matter to the Commissioners for particularization of their calculations. Additional hearings were held at which testimony was taken. Thereafter, the Commissioners rendered a ‘ ‘ Post-Remand Final Report” dated June 7, 1971, increasing the award to $439,806.82.
Both parties thereupon moved to set aside the report and remand the matter to the Commissioners. By order dated January 5, 1972, the County Court re-remanded the matter to the Commissioners for further particularization consistent with this court’s direction in 1969, and directed the Commissioners to-render a second “Post-Remand Final Report”. The town’s appeal from this order was dismissed as being premature by this court on March 30, 1972 (69 Mise 2d 583). The Commissioners then rendered a second “ Post-Remand Final Report ” which, having been confirmed by the court below, is now before us for review. The amount awarded by said report is $439,806.82.
In each of the prior appeals as well as in the current one, the Appellate Division, Second Department, has referred the matter to this court for determination. Both the claimant-appellant and the petitioner-respondent have stipulated that the decision to be made by this court shall constitute judgment absolute between the parties and each waives its right to seek a new trial or to appeal to the Appellate Division, Second Department and Court of Appeals. Each party has consented in writing that this court shall have absolute jurisdiction to determine the value of the condemned parcel and further that any determination of this court, confirming, increasing or decreasing the amount of the award shall be deemed to be the final determination in this proceeding.
The subject property consisted of 12.8580 acres located in the Incorporated Village of Manorhaven. The property was irregularly shaped but roughly rectangular and contained frontage of almost 835 feet on Manorhaven Boulevard, 1,724.20 feet of frontage on Sheets Creek and 99.01 feet of frontage on Manhasset Bay. At the time of the taking, the property was unimproved and, except for a portion along Manorhaven Boulevard, was under water at high tide.
Both parties as well as the Commissioners relied upon and utilized the same basic approach to value, evaluating the property as if filled to grade and then deducting therefrom the cost of bringing the land to that condition. In the first appeal to this court heard in the December 1968 Term, we remanded the matter because no intelligent review of the Commissioner’s calculations could be made. Their findings were in the form of *818 a lump sum conclusion of value without revealing the calculations upon which that conclusion was based. The Commissioners have finally taken our advice and their second Post-Remand Final Report contains full particularization of their approach.
As we indicated in the first appeal, the better approach to value would have been to compare raw acreage with raw acreage. The additional testimony taken after our remand and the second Post-Remand Final Report, however, indicates a complete exploration by the Commissioners of the costs to fill and bulkhead the subject property as well as the comparable sale relied upon. The method adopted herein has been approved where these projected costs are reliable and clearly demonstrable. Such is the case herein. (See Valley Stream Lawns v. State of New York, 9 A D 2d 149; Matter of Town of Hempstead [Seaford], 52 Misc 2d 554; Cuomo v. State of New York, 21 A D 2d 724; and Brocka v. State of New York, 31 A D 2d 852.) Thus, we are still of the opinion that the approach taken on this record is not inapplicable as a matter of law. (4 Nichols, Eminent Domain, § 12.31, p. 12-112 et seq.)
We pointed out in the earlier appeal that claimant’s real estate appraiser found a highest and best use for the property as a garden apartment site, and a value for such purpose when filled, bulkheaded and on grade of $1,600,000. His valuation was based upon comparable sales and represented a unit value of $3 per square foot.
Petitioner’s real estate expert found a highest and best use of constructing 19 two-family homes on a portion of the premises. His appraisal is based upon a value of $7,500 for each of the 19 parcels or a total of $142,500 from which, he deducted $23,855 for fill, $19,000 for. piling and $4,285 for engineering. To the resultant $95,360 he adds $27,175 for the remaining 10.870 acres at $2,500 per acre due to the speculative nature of the development of the remaining acreage.
The Commissioners accepted the claimant’s highest and best use concept and found the sum of $439,806.82 to be the proper compensation based upon one comparable sale (Toms Point), which was adjusted 27 % for time, giving an indicated raw value of $1.12 per square foot ready to build.
Subject land was mostly under water and required fill and bulkheading. These costs totaled $187,500, giving an indicated value of $439,805.
The Commissioners found 200,000 cubic yards of fill were needed amounting to $100,000 and $87,500 worth of bulkheading which was within the range of testimony. (Matter of City *819 of New York [Coogan], 20 N Y 2d 618; Matter of City of New York [East 161st Street], 159 App. Div. 662.)
Both parties do, however, assert that the Commissioners erred in other respects. The claimant-appellant Contends that the Commissioners ignored clear evidence to the effect that the Toms Point sale required fill and bulkheading and failed to adjust for these factors in their calculations. The petitioner-respondent contends that the Commissioners erred in relying upon a single comparable sale, erred with respect to the area of that sale and failed to consider the need for piling on the subject property and improperly omitted an adjustment for that factor.
Since the petitioner-respondent’s contentions attack the foundation upon which the Commissioners based their value calculations, the court will consider them first
The first such contention is that it was error for the Commissioners to rely only on one comparable sale and to refuse to consider the other sales presented by both parties. Counsel argues that modern appraisal methods provide for making complex adjustments to allow for the varying degrees of comparability between the sales and the subject property under review and that the more sales available, a broader, and, presumably, sounder basis for comparison exists. While this argument may have some merit, counsel cites no case, and the court is unaware of any holding which prohibits, as a matter of law, the use of one sale to determine value. In fact, reliance upon one sale as a means of determining value is recognized in this State as valid. (Matter of City of New York [Ginsberg], 36 A D 2d 156, 158; Godfried v. State of New York, 22 A D 2d 973, affd. 18 N Y 2d 896.) Comparability does not necessarily connote many sales nor does it mean identity because no two parcels are exactly alike, but it “ does mean, at the very least, similarity in many respects.” (Fairfield Gardens v. United States, 306 F. 2d 167, 173; Village of Lawrence v. Greenwood, 300 N. Y. 231; 1 Orgel, Valuation under Eminent Domain, §§ 137, 138; United States v. Johnson, 285 F. 2d 35; Leeaye, Inc. v. District of Columbia Redevelopmenf Land Agency, 296 F. 2d 438; United States v. 15.3 Acres of Land, 154 F. Supp. 770).
Inasmuch as the Commissioners were attempting to determine market value, evidence of sales of comparable properties had to be used to determine such value, for these sales truly reflect the market conditions in a given area in a given time. (See Village of Lawrence v. Greenwood, supra.) The threshold question on admissibility is prima facie similarity (Perper v. State of New York, 15 Misc 2d 787; 787 Central Park Ave. v. *820 State of New York, 5 A D 2d 628). Such prima facie finding of similarity, however, does not require the trier of facts to give any weight to the evidence thus admitted (Levin v. State of New York, 13 N Y 2d 87, 92). Courts regularly admit sales which are prima facie comparable only to hold them to be of ‘ ‘ no assistance in determining the value of the damage parcels being considered.” (Matter of City of New York [2460 Jerome Ave. Realty Corp.], 18 A D 2d 991; Matter of City of New York [Marshall], 16 A D 2d 570.)
It is clear, therefore, that the Commissioners did not bind themselves to give credence to the sales which, upon examination, were deemed not truly comparable even though initially the sales appeared sufficiently similar to be admissible in evidence. (29A, C. J. S., Eminent Domain, § 273.)
The petitioner-respondent, in its brief, divides the comparable sales introduced, into two categories: (1) apartment house land in a “ready to build” condition; (2) apartment house land requiring site improvements before development could begin. None'óf the sales in the former category is truly comparable. They were all substantially smaller than the subject, were not waterfront property, were located in fairly developed neighborhoods and were ready to build. In order to compare them with the subject, too many extensive adjustments would be required. Of all the sales, the Commissioners, as the triers of the fa^ts, could properly exercise discretion concerning the sale or sales on which they would place the most reliance. On this record before us, we cannot say that they erred, as a matter of law, in determining value based on one sale.
The petitioner-respondent also contends that the Commissioners erred in their calculation and evaluation of the area and unit price of the Toms Point sale. The undisputed purchase price of the sale was $211,000, but the actual area as determined by a survey made subsequent to the sale was 5.805 acres rather than the 5.5 acres testified to by the real estate appraisers for both parties. Petitioner-respondent argues therefore, that the unit price should be $.83 per square foot and not $.88 per square foot as utilized by the Commissioners for their calculations.
The Commissioners, in their second Post-Remand Final Report, recognized this apparent discrepancy but found that the buyer bargained for the comparable on the basis of 5.5 acres and that any subsequent facts respecting the area did not alter the result of the bargaining between the parties to that sale. Petitioner-respondent contends that there is no evidence to support this finding and that the testimony of the seller, Mr. Charles *821 Hyde Walker, at the post remand hearing on November 10,1970, shows the seller’s attempt “ to pass it off as 6 acres
Mr. Walker, however, testified that the Toms Point sale was “ estimated to contain approximately five and a half acres ”. He further testified as follows:
“ When we were selling it we endeavored to pass it off as 6 acres. It approximates, to the best of our knowledge, and we have an engineer with us today, to the best of our knowledge it runs in the range of five acres to five and a half acres.
“ Since it is a water-front parcel and varies in size depending on the tides and ramifications of the world it could vary a half acre one way or another.”
In view of this testimony which is uncontradicted and in view of the fact that the real estate experts for both parties herein analyzed the sale based upon an area of 5.5 acres which, in the absence of any evidence to the contrary, was presumptively in the minds of the parties to the sale, the rationale of the Commissioners’ finds support in the record and is unassailable.
The petitioner-respondent finally contends that the subject property required piling before any buildings could be constructed and that the Commissioners erred in not adjusting for this factor in their calculations. Counsel argues that the cost of necessary piling should be a deduction from the “ ready to build ” value of the subject property in order to determine its raw value;
Claimant-appellant’s expert Carlin testified that piling was not necessary and that it would be feasible to construct buildings on spread footings if a technique of overburdening the fill were used. On cross-examination, petitioner-respondent’s expert, Kahler, testified that extensive investigation and load bearing tests would be required in order to determine whether piling could be dispensed with and spread footings could be used. It is obvious from the testimony, that the need for piling is directly related to the size, weight and nature of the buildings to be constructed as well as to the load bearing capacity of the soil itself. The necessary cost of such piling is, therefore, an item related to the cost of construction of improvements and is not related to the cost of land. It is too speculative an item to be considered. (Matter of Town of Hempstead [Seaford], 52 Misc 2d 554, supra.)
The claimant-appellant contends that, since the Toms Point sale was used as a base to determine the “ ready to build ” value of the subject property, the unit price of the sale must truly be a “ ready to build ” price. The Commissioners found that *822 the Toms Point sale needed no fill or bulkheading and that the $.88 per square foot cost represented a “ ready to build ” figure on the date of the sale. Counsel for claimant-appellant argues that the evidence clearly establishes that Toms Point needed both fill and bulkheading to make it “ ready to build ” and that the $.88 per square foot selling price represented a raw land value on the date of the sale to which must be added the cost of necessary fill and bulkheading.
The testimony clearly supports claimant-appellant’s contention. The Commissioners found: ‘ ‘ from a review of the record that there was nothing to indicate any requirement for additional fill or bulkheading on the Toms Point property at the time that the sale took place * * * and that any subsequent placing of additional fill or bulkheading upon the Toms Point property was the result of a subjective decision by the developer, not required as an on-site improvement.”
Nevertheless, the uncontradicted testimony of both the seller and the buyer-developer of the Toms Point property demonstrates. that fill was needed and was in fact brought in to the property. Any fill which existed on the property had been placed there in the 1920’s and had since been washed away or had been dumped casually over the years and such amounts were insignificant.
The engineering testimony concerning the need for and quantity of fill at Toms Point is also uncontradicted. As a matter of fact, the petitioner-respondent’s engineering expert testified that he checked the fill computations for the Toms Point property and found them to be substantially the same as his.
With respect to bulkheading which was needed to retain the fill and protect the Toms Point property, both seller and buyer testified that there was none on that property at the time of the sale. The buyer testified that he spent between $45,000 and $50,000 for bulkheading. While the original contract for this work called for $36,000, the buyer’s uncontradicted testimony is that the actual cost rose to $45,000 or $50,000 because of the need to use union labor and the need to increase the height of the bulkhead level for safety reasons to protect the buildings to be built and the future residents.
The Commissioners’ findings that fill existed on the Toms Point property and that the decision to fill and bulkhead was the result of the subjective choice of the buyer are wholly without support in the record and completely contrary to the testimony. In fact, at the close of the post remand hearings, the *823 petitioner-respondent argued in its brief that fill and bulkheading were required on the Toms Point property.
The court finds that the costs to render the Toms Point sale in a “ ready to build ” state are, namely, $10,000 for fill and $45,000 for bulkheading, and must be considered in determining the value of the sale at vesting in a “ ready to build ” state. We can then find the value of the subject property in the same condition from which the clearly demonstrable development costs can then be deducted.
Based upon all of the findings, the value of the subject property must be computed as follows:
The unit cost of the Toms Point comparable at the date of sale, $.88 per square foot trended for time at the rate of 10% per year or 27% for the two years and eight months up to the testing date, results in a trended value of $1.12 per square foot. The cost of fill and bulkheading, $55,000 total, when added to the comparable, adds $.23 per square foot to the unit land cost and results in a unit value of $1.35 per square foot. This figure represents the unit value of “ ready to build ” property in the area on the vesting date whose highest and best use was for garden apartment development.
Multiplying the unit value, $1.35 per square foot, by the area of the subject property, 560,094 square feet, results in a value, on the vesting date in a “ ready to build ” condition, of $756,126. From this figure, the cost of fill and bulkheading needed to render the subject “ ready to build ”, must be deducted in order to arrive at a raw land value. The total for such fill and bulk-heading is found to be $187,500. Therefore, the market value of the subject property is found to be $568,626 as of the vesting date plus $1 for a nonexclusive easement. While we hold that the method of valuation used is not, in this record, erroneous as a matter of law, it nevertheless leaves much to be desired. However, to burden both parties with the prospect of new hearings after almost 11 years would strain the concept of just compensation.
Accordingly, the order appealed from should be modified by increasing the amount of the award to $568,627, and as so modified, affirmed without costs on this appeal.
Glickman and Pittont, JJ., concur in opinion by Hogan, P. J.
Order modified by increasing the amount of claimant’s award to $568,627, and as so modified, affirmed, without costs.