In the Matter of SAUL E. KATZ et al., as Executors of MARTHA H. KATZ, Deceased, Appellants, v ASSESSOR OF THE VILLAGE/TOWN OF MOUNT KISCO et al., Respondents.

Second Department, September 21, 1981

APPEARANCES OF COUNSEL

*Blasi & Zimmerman (Richard T. Blancato* of counsel), for appellants.

*Anthony J. Monteleone* for respondents.

OPINION OF THE COURT

MOLLEN, P. J.

In these consolidated tax certiorari proceedings, petitioner Martha Katz sought a reduction of the assessments on her real property located in the coterminous Village and Town of Mount Kisco. Her primary contention was that the respondents had not adequately considered the effect of the Freshwater Wetlands Act on the value of her property. Special Term held that Ms. Katz had failed to meet her burden of proving the adverse impact of the wetlands

designation, but it nevertheless reduced the assessments based upon the respondents' comparable sales and upon Ms. Katz' evidence of development costs. Ms. Katz appealed from the resulting judgment. We affirm.

The property involved consists of 24.1 acres bisected by an active stream, with 7 acres to the west and 17.1 acres to the east, and is part of an 81-acre planned industrial park commonly known as Radio Circle Industrial Park. The park is zoned M-1, for light industrial development. Approximately one half of the property is subject to flooding. The 7-acre westerly portion is below grade, swampy and wooded; the easterly portion is substantially level and at grade with the rest of the park. The village and the town assessed the property at $325,900 and $450,000, respectively. It was purchased by Ms. Katz in 1967 for $435,000.

The property is included in the tentative wetlands map of the State Department of Environmental Conservation, drawn pursuant to the mandate of ECL article 27, known as the Freshwater Wetlands Act. The act requires a permit from the Commissioner of Environmental Conservation for development of lands shown on the wetlands map. The property is also subject to the village's "Wetlands and Drainage Control Law", under which a permit to develop must also be obtained from the Village of Mount Kisco.

The evidence submitted at Special Term consisted of opinion testimony and proof of comparable sales. It was the opinion of Ms. Katz' real estate expert that an intelligent buyer would discount the value of the property by 50% due solely to its wetlands designation under the State statute. Of the sales offered by Ms. Katz as comparables, three did not involve wetlands. A fourth involved land designated as wetlands under the local wetlands law, but not under what she alleged to be the more restrictive State statute (this sale had not yet been closed and consequently was not given commensurate weight with the other comparables considered by the court). The sales relied upon by the respondents all involved parcels of land designated as wetlands under the local wetlands law.

Special Term disregarded the testimony of Ms. Katz' expert as too speculative, and further rejected as noncomparable her three sales which did not involve wetlands.

However, based upon her uncontradicted evidence of development costs and upon the respondents' comparable sales, the court reduced Ms. Katz' assessments to $225,559 for the village and $441,380 for the town.*

On appeal, appellants contend (1) that Special Term abused its discretion by disregarding Ms. Katz' expert's testimony on the effect of wetlands designation; (2) that her comparable sales should not have been excluded and that those upon which the court did rely were noncomparable as a matter of law; and (3) that the values at which the court finally arrived were not supported by substantial evidence. We reject each of these contentions.

We agree that wetlands designation, like any other actual or potential restriction on the use of property, may adversely affect the value of land for tax assessment purposes. Indeed, the State wetlands statute itself appears to recognize as much. ECL 24-0905 provides: "Any freshwater wetland subject to land use regulations pursuant to section 24-0903 of this article or subject to a cooperative agreement pursuant to section 24-0901 of this article shall be deemed subject to a limitation on the use of such wetlands for the purposes of property tax evaluation, in the same manner as if an easement or right had been acquired pursuant to the general municipal law. Assessed value shall be based, during the duration of such agreement or regulations, on the uses remaining to the owner thereof." That fact, however, does not alter the general rule that "[t]here is a presumption of validity of an assessment by the taxing authority, and the burden is imposed on the [taxpayer] to show by substantial evidence that the assessments are excessive." *(Matter of Metropolitan Life Ins. Co. v Tax Comm. of City of N. Y.,* 77 AD2d 506; see, also, *Matter of Barker's Stores v Board of Review of City of Auburn,* 74 AD2d 994.) We agree with Special Term that Ms. Katz failed to carry her burden on her claim as to the effect of wetlands designation.

None of the sales offered by Ms. Katz as comparable, and rejected by the court as such, involved parcels designated as wetlands. Moreover, she had made no application for a

---

* Following the submission of briefs to this court, Ms. Katz died. By order dated May 14, 1981, this court substituted her executors as party petitioners-appellants.

development permit for her land and presented no evidence relating to the fate of any such applications which may have been made for other property with similar wetlands designations. Plainly, any evidence that reasonable development had been prevented by the denial of such applications would constitute powerful proof of a lowering of value of the property affected. (Cf. *Spears v Berle,* 48 NY2d 254.) Instead, Ms. Katz offered only the opinion of her expert witness that a prospective purchaser would discount 50% from the purchase price on account of the wetlands designation.

It is well settled that a trier of facts in a valuation case is not bound by opinion testimony where there exists in the record substantial independent evidence on which to base its finding. *(Matter of City of New York [A. & W. Realty Corp.],* 1 NY2d 428.) A finding of value will not be disturbed if it is sufficiently explained and if it is based on substantial evidence in the record rather than on the subjective judgment of the court. *(Matter of City of New York [A. & W. Realty Corp.], supra; Flynn v State of New York,* 35 AD2d 640; *Deutsch v State of New York,* 32 AD2d 599, mot for lv to app den 25 NY2d 739.) Under the circumstances at bar, we cannot say that Special Term abused its discretion in disregarding the opinion testimony of Ms. Katz' expert. In explanation of how he arrived at the discount figure of 50%, the witness offered only his judgment on the likelihood that an application for a permit to develop the subject property would be denied, and on the prospects of the litigation which would follow a denial. He could offer no examples to support his opinion. In our view, it was not unreasonable for the court to disregard this testimony as speculative.

With respect to the comparable sales relied upon by Special Term, we note preliminarily that "[s]ince comparability is essentially a question of fact, trial judges exercise broad discretion in ruling on the admissibility of proof of comparable sales." *(United States v Certain Interests in Prop. in Borough of Brooklyn,* 326 F2d 109, 113.) Appellants argue that the sales relied upon by Special Term are not comparable as a matter of law due to the relatively small size of the parcels involved, one of which was also

subject to a different zoning classification. Plainly, differences in size and zoning will diminish the similarity, and therefore the relevance, of comparable sales. "The particular relevance of all data will depend upon such factors as time, the relative size of the properties, their condition, the nature of the respective neighborhoods, and the circumstances of the sale. See generally 1 Orgel, Valuation Under Eminent Domain, §§ 136-37 (2d ed. 1953)." *(United States v Certain Land in Borough of Brooklyn,* 346 F2d 690, 693; see, also, *Village of Lawrence v Greenwood,* 300 NY 231; *Matter of Town of North Hempstead [Sands Point Marina],* 73 Misc 2d 815.) It must be borne in mind, however, that "[c]omparability does not *** connote *** identity" *(Matter of Town of North Hempstead [Sands Point Marina], supra,* p 819), and that comparable sales are "commonly the most accurate standard" available for valuation. *(Matter of Merrick Holding Corp. v Board of Assessors of County of Nassau,* 45 NY2d 538, 542.) Thus, dissimilarity in one or more respects should not necessarily render irrelevant a sale of an otherwise similar parcel of land.

In support of their argument challenging the respondents' comparables, appellants rely on three cases in which the trial court's exclusion of certain comparable sales was sustained, and a fourth in which the court was reversed for having relied on a sale found to be noncomparable as a matter of law. In *Frontier Town Props. v State of New York* (36 AD2d 148, 154, affd 30 NY2d 892), comparable sales had been excluded on the ground that the expert's adjustments were based on his "naked unsupported opinion". The Third Department, in sustaining the trial court's finding, mentioned the relatively small size of the comparables (p 154) but predicated its holding on the view that "[s]ince [the expert's] valuations were not adequately supported, they are entitled to little or no consideration". In *Niagara Falls Urban Renewal Agency v 123 Falls Realty* (66 AD2d 1009) the Fourth Department held that a court could reject comparables which differed in both size and location. And, in *Matter of Town of North Hempstead* (73 Misc 2d 815, 820, *supra)* the Appellate Term held that the commissioners in a condemnation proceeding properly rejected comparables which were "substantially smaller than the subject,

were not waterfront property, were located in fairly developed neighborhoods and were ready to build." Moreover, in *United States v Michoud Ind. Facilities* (322 F2d 698, 706), the only case cited by appellants which reversed a trial court's finding of comparability, the comparison had been made with "tracts which neither by location nor quantity of land involved or other characteristics [bore] any resemblance to [the subject property]."

In the case at bar, despite the rather large difference in size between the respondents' comparables (ranging from .83 to 1.51 acres), and that of the subject property (24.1 acres), and despite the different zoning classification of the respondents' fourth comparable, we hold that the properties were sufficiently alike in "character, situation, usability and improvements" *(United States v Johnson,* 285 F2d 35, 41) to have been relevant, with appropriate adjustments made for existing dissimilarities. Consequently, we are unable to say that Special Term, as a matter of law, could not consider these sales in arriving at its finding of value.

It was similarly a proper exercise of discretion for the court to have excluded three of Ms. Katz' four comparable sales. None of the three involved property designated as wetlands, whereas each of the respondents' comparables was so designated. Moreover, although some adjustment had to be made to account for the disparate character of the properties, the court was justified in discrediting as highly speculative the 50% reduction figure proposed by Ms. Katz' expert. Thus, Ms. Katz failed either to submit comparables which were designated as wetlands or to present a creditable adjustment figure to compensate for the lack of such designation. In light of these circumstances, we cannot say that Special Term acted unreasonably in discounting her evidence.

Finally, we conclude that the values actually found by the court were within the range of the testimony. While there appears to be little evidence in the record to support the court's classification of the subject property as five acres of "prime" and 19.1 acres of "support" property, this division was plainly meant only as an illustration of the tract's varied topography. The appraisers for both parties

offered assessments based upon the average value of each acre, indicating that the subject property is considered to be a single parcel for development purposes. We therefore look to the total value found by the court which is well within the range of the evidence presented. (Cf. *Spyros v State of New York,* 25 AD2d 696.)

In view of the foregoing, we find it unnecessary to reach the issues raised by respondents concerning the appropriate construction of certain sections of the Freshwater Wetlands Act.

HOPKINS, TITONE and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Westchester County, dated June 17, 1980, affirmed, without costs or disbursements.