[616 NYS2d 405]

In the Matter of 78 SOUTH FIRST STREET HOUSING DEVELOP-
MENT FUND CORPORATION, Appellant, v COMMISSIONER OF
FINANCE OF CITY OF NEW YORK et al., Respondents.

Second Department, September 12, 1994

APPEARANCES OF COUNSEL

*Rosenman & Colin,* New York City *(Gerald A. Rosenberg* and *Janet Ellis Meiman* of counsel; *Allison B. Sher* on the brief), for appellant.

*Paul A. Crotty, Corporation Counsel* of New York City *(Edith I. Spivack, Joseph I. Lauer* and *Judith R. Greenwald* of counsel), for respondents.

*Debevoise & Plimpton,* New York City *(Gary W. Kubek, William S. Adams* and *Shlomo Huttler* of counsel), for Urban Homesteading Assistance Board, Inc., and another, *amici curiae.*

## OPINION OF THE COURT

FLORIO, J.

In this tax certiorari proceeding, we are called upon to determine whether certain limited restrictions on the use and sale of the petitioner's property must be taken into account when valuing the property in order to determine its proper value for real estate tax purposes. We agree with the determination of the Supreme Court that these restrictions need not be taken into account when making such a valuation and, therefore, affirm that court's order and judgment granting partial summary judgment to the respondents, the Commissioner of Finance of the City of New York and the Tax Commission of the City of New York.

The petitioner, 78 South First Street Housing Development Fund Corporation, is a "housing development fund company" organized pursuant to article XI of the Private Housing Finance Law. The purpose of article XI is, *inter alia,* "to provide *temporary* financial and technical assistance to enable [housing development fund] companies to participate more effectively in existing municipal, state and federal assistance programs" (Private Housing Finance Law § 571 [emphasis added]).

As stated in its 1981 certificate of incorporation, the petitioner was "organized exclusively for the purpose of developing a housing project for persons of low income" at 78 South First Street, Brooklyn, New York. Although organized as a corporation pursuant to Business Corporation Law § 402 (as required by the Private Housing Finance Law), the petitioner is, in substance, a cooperative. The tenants occupy their apartments pursuant to proprietary leases issued to shareholders and are referred to as cooperators in the certificate of incorporation.

Additionally, the certificate of incorporation provides for certain restrictions on the sale and use of the building and on the sale of shares owned by the individual shareholders or cooperators of the corporation. These restrictions on the sale and use of the subject property generally conform to the purposes for which the petitioner was organized (see, Private Housing Finance Law § 571).

As set forth in its certificate of incorporation, the building must be used to provide low-income housing for 15 years following its conveyance from the City of New York (hereinafter the City) to the petitioner. Additionally, during that same 15-year period, the building cannot be sold or otherwise disposed of without the prior written approval of the Commissioner of the New York City Department of Housing Preservation and Development.

With respect to the sale of shares by individual shareholders, the certificate of incorporation provides, inter alia, that, for three years from the date of the conveyance from the City, a shareholder may retain from the sale price only the original purchase price plus the cost of certain capital improvements and the petitioner "will retain the entire balance of the sales price, if any, as a reserve for capital and operating expenses, unless 75 percent of the shareholders approve an allocation of up to 30 percent of the balance to be retained by the selling tenant co-operator."

In 1982, the property was acquired by the petitioner from the City of New York for $7,250. The petitioner alleges that this price was the fair market value for city-owned buildings as evidenced by the City's own resolution authorizing the sale.

The property consists of a fully occupied, five-story building containing 29 walk-up apartments. The City had previously foreclosed on the property in an in rem foreclosure proceeding. Thereafter, the property was assessed as follows:

| Tax Year | Final Assessed Valuation |
|----------|--------------------------|
| 1982/1983 | $115,000 |
| 1983/1984 | $100,000 |
| 1984/1985 | $100,000 |
| 1985/1986 | $100,000 |
| 1986/1987 | $192,000 |
| 1987/1988 | $192,000 |
| 1988/1989 | $192,000 |
| 1989/1990 | $200,000. |

In this consolidated tax certiorari proceeding, the petitioner seeks review of the assessments for the 1987/1988, 1988/1989, and 1989/1990 tax years. The petitioner contends that those assessments are unlawful and in violation of the relevant provision of the Administrative Code of the City of New York, namely section 11-207, which reads, in pertinent part, as follows:

"§ 11-207 Duties of assessors in assessing property. a. The assessors shall furnish to the commissioner of finance, under oath, a detailed statement of all taxable real estate * * *

"b. Such statement shall contain * * * the sum for which, in their judgment, each separately assessed parcel of real estate would sell under ordinary circumstances if it were wholly unimproved; and separately stated, the sum for which the same parcel would sell under ordinary circumstances with the improvements, if any, thereon. The assessors shall include in such statement such other information as the commissioner of finance may, from time to time, require."

In the Supreme Court, the petitioner sought, *inter alia,* a declaration that the Commissioner of Finance could not disregard the sale and use restrictions on the petitioner's property in assessing it. Based on the published tax rolls, petitioner argued that between the years 1982 and 1990 the property was assessed at 13 to 28 times its fair market value. The petitioner contended that the reason for the overvaluation was the conscious disregard by the respondents of the sale and use restrictions. The petitioner moved for partial summary judgment on the issue of overvaluation.

In response, the respondents argued that the property's purchase price was not set at the fair market value. Rather, it was a price fixed by the City according to a set formula. The respondents also argued that neither the Private Housing Finance Law nor the Administrative Code prescribe any particular valuation method. Moreover, they do not proscribe the

respondents from valuing the property without taking into account the transfer restrictions contained in the petitioner's deed and certificate of incorporation.

The Supreme Court denied the petitioner's motion for partial summary judgment and granted partial summary judgment to the respondents. In its order and judgment the Supreme Court stated, "[R]estrictions upon petitioner's power of use and sale of its property are not relevant to the assessment thereof for real property tax purposes." We agree with the Supreme Court that the restrictions on the sale and use of the subject property are personal to the petitioner and its shareholders and do not lessen the value of the entire parcel of real property that was assessed in this case. Thus, we affirm the Supreme Court's determination.

The prior case of *Matter of Knickerbocker Vil. v Boyland* (16 AD2d 223, *affd* 12 NY2d 1044) is very persuasive with regard to this matter. In *Knickerbocker,* a divided First Department (in an opinion that was later affirmed by the Court of Appeals), determined the proper valuation for property burdened by restrictions very similar to, and in one important respect somewhat more restrictive than, those present in the case at bar. In *Knickerbocker,* the owner of the property in question was a limited-profit housing company organized under the Public Housing Law. The property consisted of apartments and stores. The applicable statute was Public Housing Law § 179 (2) which provided, in relevant part, as follows:

"§ 179. Limitations

"No housing company shall * * *

"2. Sell, transfer or assign any real property * * * and (c) except for a price not in excess of the cost of the said property less any amounts paid in amortization of the mortgage indebtedness and the retirement or redemption of stock, plus so much of the limited dividends on the stock of the said housing company from date of issue as shall have been unpaid, and accrued interest on the mortgage indebtedness and income debenture certificates."

In *Knickerbocker,* the City had assessed the property at more than the amount statutorily permitted as the maximum selling price. The petitioner, Knickerbocker Village, sought a reduction, contending that the sale restrictions amounted to a burden akin to easements and that the property should have been assessed at no more than the maximum selling price permitted by the statute.

The Appellate Division, First Department, found that the statutory restrictions were personal to Knickerbocker Village and need not be taken into account when setting the assessed value of the property. It also found that, under the Public Housing Law, the statutory sale price limitation would not be effective if a mortgage on the property were foreclosed and the premises sold *(Matter of Knickerbocker Vil. v Boyland, supra)*.

Here, the petitioner's certificate of incorporation and the deed transferring the property from the City to the petitioner contain restrictions on the petitioner's use and any subsequent transfers of the property for 15 years. As was the case in *Knickerbocker,* the restrictions do not purport to restrict any transfer made pursuant to a court-ordered sale or a sale made pursuant to a contract between the petitioner and a governmental entity. Additionally, the certificate of incorporation appears to contemplate liens and contracts between the petitioner and the United States Government. Clearly, any restrictions on the petitioner's sale of its property would not restrict any transfers made pursuant to proceedings brought upon such liens and/or contracts. Thus, it appears that the transfer restrictions involved here very closely resemble (at least in operation) the transfer restrictions previously considered in *Matter of Knickerbocker Vil. v Boyland (supra,* at 227).

Moreover, unlike the applicable statute in *Knickerbocker,* neither the applicable statute in this case nor the petitioner's certificate of incorporation impose any limitation upon the total sale price of either the building or the individual shares. The only restriction imposed upon the transfer of the building is that official approval is needed prior to such a transfer. There are no restrictions imposed on the price an individual shareholder-cooperator can ask for that individual's shares of the petitioner's stock. The only restriction on the sale price of the shares is addressed solely to the allocation of any profit a shareholder may make on the sale of the petitioner's stock to another. Neither the actual sale price of the share nor the sale price of the building is restricted. Thus, the reasons that the restrictions imposed here are personal and need not be taken into account when valuing the building for real estate tax purposes are even more compelling than in *Knickerbocker.*

We are not convinced, as urged by the petitioner, that we should adopt the holding of the New Jersey courts in *Prowitz v Ridgefield Park Vil.* (237 NJ Super 435, 568 A2d 114, *affd* 122 NJ 199, 584 A2d 782). In *Prowitz,* the New Jersey court was also faced with the question of determining whether

certain resale restrictions contained in deeds to certain condominiums (which were restricted to families with incomes below a certain level) should be taken into account in valuing those units for real estate tax purposes. The restrictions in question limited in perpetuity the maximum price an individual condominium owner could obtain upon the resale of that individual's condominium unit. In contrast, in the case at bar, there is no such limitation on the maximum sale price of either the building or the individual shares (notwithstanding that the petitioner, and not its shareholders, would receive most of the profit from any sale of the shares). We, thus, find that *Prowitz* is factually inapposite and decline to follow it in this instance.

*City of Rochester v Assessor of Town of Conesus* (136 AD2d 881) does not offer any compelling reason for us to direct the respondents to take into account the restrictions on the sale and use of the petitioner's property when valuing that property for real estate tax purposes. The *Rochester* case involved the assessment of certain lakeside property owned by the City of Rochester and located in the Town of Conesus. The land in question was being used as a watershed for the City of Rochester's water supply. The transfer of the property to the City of Rochester was for water supply purposes, and the property clearly appeared likely to continue to be used for such purposes. Under those circumstances, the Appellate Division, Fourth Department, held that the Town of Conesus, in assessing the property, must value it according to its current use, i.e., as watershed property and not as more valuable lakeside property. Clearly, the rationale behind the restriction in that case was the fact that the property was destined to continue to play the same role in fulfilling a vital municipal function—that of providing Rochester's citizens with water.

In contrast, the restrictions imposed here will expire in the not-too-distant future, freeing the property to be used in any legally permissible manner and permitting the shareholders to retain the full sale price for their shares. Moreover, there does not appear to be any compelling reason why the petitioner or its shareholders would continue to operate the property under the same restrictions and for the same purposes as it is now being operated. Thus, unlike the property in *City of Rochester v Assessor of Town of Conesus (supra)* it would seem that the use of the property in this case may very likely change within a comparatively short period of time. We, therefore, agree with the holding of the Supreme Court that

the restrictions are temporary in duration and, once they expire, will not bind future owners. Thus, they do not have to be taken into account in valuing the petitioner's building for real estate tax purposes.

Finally, we observe that the Private Housing Finance Law provides a means whereby local legislative bodies may relieve housing development fund companies organized pursuant to article XI of the Private Housing Finance Law from the burden of real property taxation through the enactment of a tax exemption (see, Private Housing Finance Law § 577). We agree with the Supreme Court that the presence of this tax exemption provision is a further indication that the restrictions on the petitioner's sale and use of its property ought not to be considered in valuing the property for real estate tax purposes. Clearly, had the Legislature intended such restrictions to be considered in valuing the property, it could have included such a provision in the tax exemption provision. The failure to do so is some indication that the Legislature was not mandating that any valuation take into account restrictions such as those imposed here. Moreover, when it has intended restrictions on the use of property to be taken into account in making valuations for tax assessment purposes, the Legislature has enacted appropriate statutory provisions mandating it (see, e.g., Matter of Katz v Assessor of Vil./Town of Mount Kisco, 82 AD2d 654, 656).

Accordingly, the order and judgment is affirmed, without costs or disbursements.

BALLETTA, J. P., SANTUCCI and KRAUSMAN, JJ., concur.

Ordered that the order and judgment is affirmed, without costs or disbursements.