■ STAR PLAZA, INC., Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 58717.)—Appeal from a judgment in favor of claimant, entered October 16, 1979, upon a decision of the Court of Claims. On December 6, 1972, the State appropriated a strip of land from the frontage of the Star Plaza, a neighborhood shopping plaza comprised of 5.296 acres located in the southwest corner of the intersection of Routes 20 and 155 in the Town of Guilderland. The land was taken for road-widening purposes. The State acquired 0.227 acre resulting in a loss of 31 parking spaces located in the parking area provided in front of the stores in the plaza. Access to the plaza was also diminished. The State's appraisers testified that the claimant sustained no consequential damages as a result of the appropriation. Claimant's appraiser testified that claimant suffered consequential damages. The court awarded claimant the sum of $114,825,

---

plus interest, based on before and after capitalization rates of 11.4% and 12.4% respectively, of which $82,665 represented consequential damages. On appeal, the State contends the finding of consequential damages is not supported by substantial evidence and that the Court of Claims erred in calculating the amount of the award for such damages. These contentions are without merit. The judgment of the Court of Claims should be affirmed. There was ample evidence presented at trial by claimant's expert witnesses, one of whom was a traffic engineer, to sustain the findings of the trial court. Claimant's real estate appraiser, G. Richard Kelley, testified in effect that the taking substantially lessened the value of the property occupied by a bank located in the plaza by rendering access to it "remote and circuitous". He also stated that the loss of the 31 parking spaces reduced the capacity of the plaza to attract customers, a condition which would inevitably lead to a deterioration of the quality of the tenancy. Claimant's traffic flow expert testified in substance that the value of the property was decreased by the taking. He said that the loss of the 31 parking spaces and the loss of three of the five entry points to the plaza caused traffic flow problems at peak shopping hours resulting in congestion and the inability of customers to park near the individual store at which they planned to shop, thereby diminishing the plaza's value. The State's experts were unable to refute the testimony given by claimant's experts. In support of its assertion that the Court of Claims erred in calculating the amount of the award for consequential damages, the State argues that the capitalization rate found by the court rests on the appraiser's unsupported opinion rather than on any factual data. This argument fails. The record reveals that claimant's appraiser's capitalization rate was based on factual data. Mr. Kelley testified at trial to the net value of the leases of the stores at the plaza before and after the taking and the effect these figures would have on how much a willing buyer would pay a willing seller for the property before and after the taking. In substantiation of his before and after figures, he described the effect the loss of the 31 parking spaces and the loss of access would have on the valuation of the plaza. In addition, a detailed appraisal report prepared by Mr. Kelley and introduced into evidence contains sufficient data to support the before and after capitalization rates which he arrived at. As a general rule, the measure of damages for a partial taking is the difference between the property's value before condemnation and the value of the remainder thereafter *(Mil-Pine Plaza v State of New York,* 72 AD2d 460, 462). The proper capitalization rate is a factual question for the trial court on which the expert opinion of the appraisers is competent evidence *(Diocese of Buffalo v State of New York,* 18 NY2d 41; *Kurnick v State of New York,* 54 AD2d 1098). In the case of income property, such as a shopping plaza, the factors considered are those which are most probative of the future rate of return demanded by the investment market *(Matter of City of New York [First Elephant Estates—La Hermosa Church],* 17 AD2d 317, 324). Thus, it is evident that the rate of capitalization arrived at by claimant's appraiser and utilized by the trial court was based on the proper criteria. Since the award of the Court of Claims falls within the range of the testimony and is supported by the record, there appears to be no reason to disturb it *(Conklin v State of New York,* 22 AD2d 481). Judgment affirmed, with costs. Mahoney, P. J., Greenblott, Main, Mikoll and Herlihy, JJ., concur.