# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1040**

**CA 12-00434**

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, CARNI, AND SCONIERS, JJ.

---

IN THE MATTER OF THE BOARD OF MANAGERS OF
FRENCH OAKS CONDOMINIUM, PETITIONER-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

TOWN OF AMHERST, HARRY WILLIAMS, TOWN ASSESSOR
OF TOWN OF AMHERST, BOARD OF ASSESSMENT REVIEW
OF TOWN OF AMHERST, RESPONDENTS-APPELLANTS,
AND WILLIAMSVILLE CENTRAL SCHOOL DISTRICT,
INTERVENOR-RESPONDENT.

---

PHILLIPS LYTLE LLP, BUFFALO (MARC W. BROWN OF COUNSEL), FOR
RESPONDENTS-APPELLANTS.

AMIGONE, SANCHEZ & MATTREY, LLP, BUFFALO (B.P. OLIVERIO OF COUNSEL),
FOR PETITIONER-RESPONDENT.

---

Appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered June 7, 2011 in proceedings pursuant to RPTL article 7. The order, inter alia, determined the value of the French Oaks Condominium after a hearing before a referee.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: Petitioner commenced this RPTL article 7 proceeding (first proceeding) seeking review of the real property tax assessments for its condominium complex (complex) for the 2009-2010 tax year. Respondents appeal from an order that determined the value of the complex for tax assessment purposes after a hearing before a referee. We affirm.

We note as background that, after commencing the first proceeding, petitioner commenced a second proceeding seeking review of the complex's real property tax assessments for the 2010-2011 tax year. The parties stipulated that a referee would hear and determine the first proceeding and that the result of the first proceeding would resolve the second proceeding.

The trial relating to the first proceeding was essentially a contest between the respective expert appraisers for petitioner and respondents. At trial, respondents moved to dismiss the first petition on the ground that the appraisal report of petitioner's expert was so fundamentally flawed that petitioner failed to meet its

burden of showing by substantial evidence the existence of a valid dispute with respect to the valuation of the complex. The Referee denied the motion and subsequently established a market value for the complex in accordance with the rules set forth in *Matter of East Med. Ctr., L.P. v Assessor of Town of Manlius* (16 AD3d 1119, 1120), and by applying an income approach to valuation (*see Matter of South Bay Dev. Corp. v Board of Assessors of County of Nassau*, 108 AD2d 493, 498). Under the income approach, the market rental value for the 39 units in the complex was estimated and the complex's overhead expenses were subtracted from that figure in order to obtain the net operating income. The net operating income was then divided by a final capitalization rate in order to obtain the value of the complex. The final capitalization rate was determined by identifying a comparable complex or complexes and dividing the yearly net operating income of each comparable complex by its sale price, which yielded a capitalization rate. The capitalization rate, in turn, was then added to a tax factor, which was calculated by multiplying the tax rate by the equalization rate, and dividing the ensuing product by 1,000. The addition of those figures, i.e., the capitalization rate and the tax factor, yielded a final capitalization rate.

After applying the calculation under the income approach, the Referee valued the complex at $4,353,030 and thereafter apportioned that amount between the 39 units in the complex. In calculating the assessed value of the complex, the Referee adopted the calculations of respondents' expert with respect to both the net operating income and the tax factor and adopted the calculation of petitioner's expert only with respect to the capitalization rate. Supreme Court subsequently ordered, inter alia, that respondent Town of Amherst and intervenor, Williamsville Central School District, were to amend the 2009 and 2010 tax rolls with respect to the complex to reflect the determination of the Referee, and that the provisions and restrictions of RPTL 727 shall apply to the Referee's determinations.

With respect to the merits, we reject respondents' contention that the appraisal of petitioner's expert does not demonstrate the existence of a credible valuation dispute regarding the valuation of the complex under the substantial evidence standard. "Our analysis begins with the recognition that a property valuation by the tax assessor is presumptively valid . . . and thus 'obviates any necessity, on the part of the assessors, of going forward with proof of the correctness of their valuation' . . . However, when a petitioner challenging the assessment comes forward with 'substantial evidence' to the contrary, the presumption disappears" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187; *see Matter of Thomas v Davis*, 96 AD3d 1412, 1413). "The substantial evidence standard is a minimal standard. It requires less than clear and convincing evidence . . . , and less than proof by a preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt" (*FMC Corp. [Peroxygen Chems. Div.]*, 92 NY2d at 188 [internal quotation marks omitted]).

" 'In the context of tax assessment cases, the "substantial evidence" standard merely requires that petitioner demonstrate the

existence of a valid and credible dispute regarding valuation' "
(*Thomas*, 96 AD3d at 1413, quoting *FMC Corp. [Peroxygen Chems. Div.]*,
92 NY2d at 188; *see East Med. Ctr., L.P.*, 16 AD3d at 1120).  In such a
proceeding, "substantial evidence will most often consist of a
detailed, competent appraisal based on standard, accepted appraisal
techniques and prepared by a qualified appraiser" (*Matter of Niagara
Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196).
The requirements for appraisal reports are set forth in 22 NYCRR
202.59 (g) (2).

     Here, respondents challenge the sufficiency of petitioner's
expert evidence.  First, respondents contend that petitioner's expert
was not qualified to testify.  We reject that contention.  The fact
that petitioner's expert is not a licensed appraiser is of no moment
(*see Matter of OCG L.P. v Board of Assessment Review of the Town of
Owego*, 79 AD3d 1224, 1226).  Likewise, there is no merit to
respondents' contention that petitioner's expert should have been
precluded from testifying on petitioner's behalf.  To the extent that
the acceptance of a fee by petitioner's expert undermines his
appraisal, that deficiency goes to the weight to be afforded that
appraisal, not its admissibility (*see generally National Fuel Gas
Supply Corp. v Goodremote*, 13 AD3d 1134, 1135; *Champlain Natl. Bank v
Brignola*, 249 AD2d 656, 657).

     Second, respondents challenge petitioner's appraisal on the
ground that it lacks information with respect to the interior areas of
each of the complex's units.  Specifically, respondents contend that
the lack of photographs of the interior of the complex's individual
units in petitioner's appraisal renders that appraisal insufficient.
We reject that contention.  Pursuant to 22 NYCRR 202.59 (g) (2),
"appraisal reports . . . *may* contain photographs of the property under
review" (emphasis added), but there is no requirement that an
appraisal must contain photographs.  Respondents' further contention
that petitioner's appraisal lacks evidentiary value because it does
not describe the interior of the units is also without merit.
Petitioner's expert opined that the differences in the respective
interiors of the units did not affect their rental value, and that
opinion was a factor for the court to consider in weighing the
evidence (*see generally Welch Foods v Town of Westfield*, 222 AD2d
1053, 1054).

     Third, respondents' contention that the Referee should have
disregarded petitioner's appraisal because it failed to establish the
fair market value of each of the complex's units lacks merit.  In view
of the similarity of the units and the fact that all of the units were
constructed at approximately the same time, there is no need here for
petitioner's expert to allocate a specific value to the individual
units in the complex.  Thus, that failure affects the weight of
petitioner's expert evidence, not its sufficiency (*see generally
National Fuel Gas Supply Corp.*, 13 AD3d at 1135; *Champlain Natl. Bank*,
249 AD2d at 657).

     Fourth, respondents contend that petitioner's appraisal is
insufficient because the market rents analysis for comparable

properties provided by petitioner's expert is not supported by "a clear and concise statement of every fact that a party will seek to prove in relation to those comparable properties" (22 NYCRR 202.59 [g] [2]).  Respondents also contend that petitioner's appraisal is insufficient because it did not provide an adequate explanation of how petitioner's expert assigned each unit in the complex a specific rental value within a range of rental values per square foot.  Pursuant to 22 NYCRR 202.59 (g) (2), "[t]he appraisal reports shall contain a statement of . . . the conclusions as to value reached by the expert, together with the facts, figures and calculations by which the conclusions were reached."  "A major reason for the rule requiring the disclosure of facts and source materials at the appraisal stage is to allow opposing counsel the opportunity to effectively prepare for cross-examination" (*Matter of Gullo v Semon*, 265 AD2d 656, 657).  Here, petitioner's expert applied location and rent concession adjustments to comparable properties in his appraisal without specifying the basis for those adjustments, and also assigned a rental value for each of the units in the complex within a range of expected rental prices per square foot without explaining the reasons for the discrepancies in the rental values of those units.  With respect to the adjustments, "petitioner was not required to provide a detailed narrative in its appraisal explaining each adjustment made in the report" (*Matter of Bialystock & Bloom v Gleason*, 290 AD2d 607, 609).  In any event, the appraisal of petitioner's expert provided respondents with "sufficient details necessary to examine the comparable [rents] used [in reaching the expert's] conclusions" regarding the value of the complex (*id*.).  With respect to the rental values assigned to each of the units in the complex, we conclude that the appraisal of petitioner's expert "contained sufficient facts, figures and calculations regarding [those rental values] so that respondent[s were] not prejudiced in cross-examining" petitioner's expert (*Gullo*, 265 AD2d at 657).

Fifth, respondents contend that the bases for and the explanation of the bases for the calculation of the capitalization rate provided by petitioner's expert are insufficient.  We reject that contention.  Specifically, respondents contend that, in calculating the capitalization rate, petitioner's expert improperly considered properties that were dissimilar to the complex in his analysis of comparable sales.  As respondents correctly note, the complex was constructed between 2002 and 2005, and all of the comparable complexes incorporated in the appraisal of petitioner's expert were built well before that time.  Additionally, the interiors of the properties considered as comparable sales (hereafter, comparable sales) were not described in petitioner's appraisal.  That appraisal, however, provided the year in which many of the comparable sales were built and the square footage, size and unit prices of the comparable sales.  Thus, there was sufficient information provided in the appraisal to allow respondents to prepare for cross-examination of petitioner's expert on any differences between the comparable sales and the complex (*see id*.).  Respondents also contend that the information regarding three of the four comparable sales cited in petitioner's appraisal is outdated because there was a subsequent sale of those properties that petitioner's expert did not consider.  Respondents' attorney, however,

had sufficient information to address the issue of the subsequent sale on cross-examination (*see id.*). Thus, inasmuch as respondents were provided sufficient information to prepare for cross-examination regarding the alleged deficiencies in the comparable sales, any weaknesses in the choice of comparable sales used by petitioner's expert goes to the weight to be given his appraisal, not its sufficiency (*see generally National Fuel Gas Supply Corp.*, 13 AD3d at 1135; *Champlain Natl. Bank*, 249 AD2d at 657). Moreover, we note that, with respect to one of the alleged "outdated" comparable sales, petitioner's expert testified that he attempted to obtain income and expense information regarding the most recent sale, but the owners of that complex would not disclose that information.

Respondents further contend that the explanation of the capitalization rate provided by petitioner's expert is insufficient because petitioner's expert used income and expense information regarding each of the comparable sales that was based on "forecasts," rather than on actual income and expenses, and failed to provide the periods to which that information related. We reject that contention. Although petitioner's expert described the financial information for each of the comparable sales as "forecast financials" in his appraisal, there was sufficient information in the appraisal to allow respondents to explore the absence of historical financial information for the comparable sales on cross-examination (*see Gullo*, 265 AD2d at 657). Thus, any weakness in the financial information relied upon by petitioner's expert goes to the weight to be afforded his appraisal, not its sufficiency (*see generally National Fuel Gas Supply Corp.*, 13 AD3d at 1135; *Champlain Natl. Bank*, 249 AD2d at 657).

Having determined that petitioner met its initial burden of demonstrating a valid and credible dispute regarding valuation, we now turn to respondents' contention that the Referee's determination with respect to the final capitalization rate is against the weight of the evidence. In conducting a weight of the evidence review, we "must weigh the entire record, including evidence of claimed deficiencies in the assessment, to determine whether [the] petitioner has established by a preponderance of the evidence that its property has been overvalued" (*Thomas*, 96 AD3d at 1413 [internal quotation marks omitted]). Viewing the evidence in the light most favorable to petitioner, the prevailing party, we conclude that the Referee's determination with respect to the final capitalization rate is supported by a fair interpretation of the evidence (*see generally Matter of City of Syracuse Indus. Dev. Agency [Alterm, Inc.]*, 20 AD3d 168, 170).

"The determination of a proper capitalization rate is a factual question for the trial court, and the opinion evidence of appraisers is competent evidence of that rate" (*Matter of Greater N.Y. Sav. Bank v Commissioner of Fin.*, 15 AD3d 661, 661). Put differently, "[t]he rate of capitalization itself is a matter for proof and argument . . . and *expert testimony based on the personal knowledge and expertise of the witness is competent evidence and admissible*" (*Matter of Addis Co. v Srogi*, 79 AD2d 856, 857, *lv denied* 53 NY2d 603 [emphasis added]). Thus, the court's determination with respect to the capitalization

rate should be affirmed if it is "within the range of expert testimony and is supported by the evidence" (*Matter of Schoeneck v City of Syracuse*, 93 AD2d 988, 988-989).

Here, respondents contend that the Referee should have adopted the capitalization rate of their expert. We reject that contention. Significantly, respondents' expert relied on national statistics rather than statistics based on the western New York real estate market. In addition, respondents' expert failed to discuss the formula he used to determine the capitalization rate on which he relied. We therefore conclude that the Referee's rejection of the capitalization rate provided by respondents' expert is supported by a fair interpretation of the evidence.

Respondents further contend that the court erred in crediting the capitalization rate of petitioner's expert on the same grounds that they challenge the legal sufficiency of petitioner's appraisal, i.e., that it was based on dissimilar comparable sales and flawed financial data; and ignored more recent comparable sales. Those alleged defects in petitioner's appraisal, however, do not render the capitalization rate proposed by petitioner's expert incredible as a matter of law. Indeed, an appraisal is an "*estimation* of worth" (Black's Law Dictionary 117 [9th ed 2009] [emphasis added]), i.e., an approximate calculation of worth, and we question the degree of precision that such a study may achieve. Thus, respondents' complaints with respect to the comparable sales data on which petitioner's expert relied are unavailing; the Referee knew of the imperfections in that data, but was justified in relying on petitioner's calculations despite those flaws. Moreover, we conclude that the Referee was also justified in crediting petitioner's capitalization rate even though that rate was calculated, at least in part, by using financial information petitioner's expert had acquired as a result of his prior professional involvement with the comparable sales. Although petitioner's expert had what appears to have been a partial expense sheet for the one comparable sale and a profit/loss statement from a second comparable sale, he acknowledged on cross-examination that he did not have audited financial statements for the comparable sales when he calculated the net operating income for those properties, which was in turn used to calculate the capitalization rate. Notably, unlike sales data, which is a matter of public record, data regarding the net operating income of a comparable property is almost always the exclusive property of private enterprise. We therefore question the frequency and ease with which an appraiser is able to obtain *private* and often *proprietary* income data with respect to a comparable property. Respondents addressed that issue at oral argument, and explained only that one would "get [such information] by calling . . . the individual associations, the individual apartments." We conclude that, under these circumstances, disturbing the order based on the failure of petitioner's expert to provide "hard" data with respect to all of the comparable sales used in his capitalization analysis would stifle the ability to challenge a tax assessment. In any event, "opinion evidence of appraisers is competent evidence of [a capitalization] rate" (*Greater N.Y. Sav. Bank*, 15 AD3d at 661; *see Addis Co.*, 79 AD2d at 857), and under these circumstances the use of

opinion evidence to establish a capitalization rate is appropriate.

All concur except PERADOTTO and CARNI, JJ., who dissent and vote to modify in accordance with the following Memorandum:  We respectfully dissent because, in our view, the conclusion of petitioner's appraiser with respect to his capitalization rate is legally and factually flawed, and each flaw is independently fatal to petitioner's case.  We thus conclude that petitioner failed to meet its ultimate burden of establishing that the subject property is overvalued, and we would therefore adopt the value set forth in respondents' trial appraisal and modify the order accordingly (see Matter of Thomas v Davis, 96 AD3d 1412, 1414).

The legal flaw underlying the capitalization rate analysis of petitioner's appraiser is that he relied on his "personal exposure" to at least three of the four comparable properties to justify the financial figures that he used to calculate his capitalization rate. Although we agree with the majority that "opinion evidence of appraisers is competent evidence of [a capitalization] rate" (Matter of Greater N.Y. Sav. Bank v Commissioner of Fin., 15 AD3d 661, 661; see Matter of Addis Co. v Srogi, 79 AD2d 856, 857, lv denied 53 NY2d 603), we conclude that such opinion evidence must still be supported "by factual data supporting such rate" (Kurnick v State of New York, 54 AD2d 1098, 1098).  An appraiser cannot simply list financial figures of comparable properties in his or her appraisal report that are derived from alleged personal knowledge; he or she must subsequently "prove" those figures to be facts at trial (22 NYCRR 202.59 [g] [2]; see Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors, 280 AD2d 724, 727, lv denied 96 NY2d 719). Petitioner's appraiser, however, failed to offer any factual support for the great majority of his figures.  Thus, there was no way for respondents' counsel to conduct an adequate cross-examination of petitioner's appraiser with respect to those figures (see Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor, 225 AD2d 841, 843).  In the absence of any documentary or tangible evidence, respondents' counsel could not determine whether petitioner's appraiser accurately reported the financial figures of the allegedly comparable properties, nor can we make such a determination.

Appraisal is not a novel or emerging profession; its methodologies are not mysterious either in general or to this Court. Countless other cases have come before this Court in which conflicting expert appraisers have had no trouble collecting the data and documents necessary to establish an evidentiary foundation for their opinions with respect to a capitalization rate, and we do not see anything remarkable here to excuse petitioner's appraiser from that task.  Moreover, even if extenuating circumstances were present in this case rendering it difficult for an appraiser to develop an evidentiary foundation for an opinion, that fact would not cure the defect in petitioner's appraisal (see Matter of City of Rochester v Iman, 51 AD2d 651, 652).  Above all, we see no occasion here to take a plain failure of proof and to extrapolate from it a new, relaxed evidentiary standard in tax assessment cases based on the assumption that to do otherwise would stifle petitions challenging tax

assessments.  Rules of evidentiary foundation are restrictive, and intentionally so (*see generally Wagman v Bradshaw*, 292 AD2d 84, 91).

Even if we were to accept petitioner's appraiser's recitation of the financial figures regarding the comparable properties based on his prior professional involvement with those properties, it is evident that the numerous precise, unrounded figures for, inter alia, gross annual income, effective gross income, and net operating income that he used came not from his memory, but rather from documents.  At the very least, those documents should have been included in his appraisal and in the record before us (*see generally Matter of Northern Pines MHP, LLC v Board of Assessment Review of the Town of Milton*, 72 AD3d 1314, 1316; *Star Plaza v State of New York*, 79 AD2d 746, 747).  Without such an evidentiary foundation, we conclude that the unsupported financial figures used by petitioner's appraiser are simply hearsay and that such figures do not become admissible upon his bare assertion that he saw them at some point in the past (*see generally Wagman*, 292 AD2d at 86-87).

We further conclude that the capitalization rate of petitioner's appraiser is factually flawed inasmuch as he did not make appropriate adjustments to the comparable properties used in calculating that rate.  The subject property's units were built between 2003 and 2005, while the four comparable properties were built in 1959, 1969, 1973, and 1978, respectively.  Additionally, most of the units in the comparable properties were smaller than the units in the subject property, some were even half the size of the subject property's units.  Petitioner's appraiser, however, failed to make any adjustments for the marked differences in age, condition, and size among the comparable properties' units and the subject property's units.

We cannot agree with the majority's conclusion that the failure to adjust for such relevant, marketable characteristics as age and size (*see generally Matter of Bialystock & Bloom v Gleason*, 290 AD2d 607, 608) is simply a matter of "weight to be given [petitioner's] appraisal."  We recognize that "[t]he suitability of comparable sales is a matter resting within the sound discretion of the trial court" and that differences in properties may be accounted for by adjustments (*Chase Manhattan Bank v State of New York*, 103 AD2d 211, 222; *see Niagara Falls Urban Renewal Agency v 123 Falls Realty*, 66 AD2d 1009, 1010, *appeal dismissed* 46 NY2d 997, *lv denied* 47 NY2d 711).  Nor do we question the general principle that " '[comparability] does not . . . connote . . . identity' " (*Matter of Katz v Assessor of Vil./Town of Mount Kisco*, 82 AD2d 654, 658).  Contrary to the majority, however, we conclude that the degree of comparability "becomes a question of fact" only where the differences between a subject property and comparable properties have been explained and adjusted for value (*Niagara Falls Urban Renewal Agency*, 66 AD2d at 1010).  Inasmuch as the record does not reflect any adjustment for the age and size of the comparable properties' units by petitioner's appraiser, any consideration of those factors by the Trial Referee or Supreme Court, or any basis for this Court to make its own adjustments, we are compelled to conclude that the purportedly comparable properties are incomparable as a

matter of law.  In other words, if weight of the evidence is the standard to be applied (*see National Fuel Gas Supply Corp. v Goodremote*, 13 AD3d 1134, 1135; *Champlain Natl. Bank v Brignola*, 249 AD2d 656, 657), we conclude that petitioner's appraisal should be accorded no weight.

To the extent that petitioner's appraisal contains "lump-sum" adjustments without breaking those adjustments down into specific categories and quantities, we conclude that such adjustments are improper because they do not afford an adequate basis for our review (*Matter of County of Dutchess [285 Mill St.]*, 186 AD2d 891, 892; *see also Geffen Motors v State of New York*, 33 AD2d 980, 980).

We would therefore modify the order by reducing the aggregate assessment to $5,080,000 and adopting respondents' apportionment of values among the subject units.

Entered:  February 1, 2013                    Frances E. Cafarell
                                              Clerk of the Court